[No. 26810. Department Two. December 27, 1937.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH P. DODD, *Appellant.*[1]

[1]Reported in 74 P. (2d) 497.

*Will G. Beardslee,* for appellant.

*B. Gray Warner* and *Henry Clay Agnew,* for respondent.

ROBINSON, J.—During the year 1936, appellant was the county engineer of King county. For each month of that year, except February, he filed an expense account, supported by an oath in the form provided by Rem. Rev. Stat., § 9948 [P. C. § 4362].

The state charged by information that the appellant was guilty of perjury in the second degree in swearing to each of the eleven expense accounts and of grand larceny in their collection. The perjury charges are set out in the first eleven counts of the information and the larceny charges in the second eleven.

A verdict of guilty was returned on all counts of the information except the last. Appellant was sentenced to not more than five years on each of the perjury counts, and not more than fifteen years on each of the larceny counts; all sentences to run concurrently. Motions for arrest of judgment and for new trial were made in due course, and in due course denied.

The information, upon which was endorsed the names of twenty-six witnesses, was filed on May 13, 1937. On May 14th, appellant appeared in person and by his counsel, Will G. Beardslee, and entered a plea of not guilty, reserving his right to move against the

information by demurrer or otherwise. On May 18th, the presiding judge set the trial for June 7th. On May 24th, Mr. Beardslee moved to vacate the setting, assigning insufficient time for preparation. The presiding judge denied the motion on May 25th, and Mr. Beardslee withdrew as counsel. The appellant himself withdrew from the vicinage, and a bench warrant for his apprehension was issued on May 26th, and he was taken into custody a day or two thereafter at Yakima.

On May 28th, the presiding judge appointed Mr. Beardslee as counsel for defendant, and on May 29th appointed John J. Sullivan as co-counsel to assist him. On June 3rd, Messrs. Beardslee and Sullivan filed a general demurrer to the information and a separate motion to set it aside, and on the same day also moved for a continuance. The motion was denied. Mr. Sullivan's affidavit having shown that he would be occupied on June 7th in the trial of other cases, the court, on June 4th, appointed Arthur E. Simon as co-counsel for the defendant. Mr. Simon declined to serve, having previous trial engagements.

On June 7, 1937, the cause came on for trial before Judge Batchelor, whereupon appellant's counsel argued his demurrer and his motion to set aside the information. The demurrer and motion were overruled. Counsel then moved for a change of venue, supporting the same by affidavit. This motion was denied. Counsel then renewed appellant's motion for a continuance, and, upon the same being denied, asked that co-counsel be appointed, which motion the court refused, and the case proceeded to trial.

We set out these pre-trial proceedings in full because the refusal by the presiding judge on two occasions, and the later refusal by the trial judge, to grant a continuance, are assigned as error and vigorously pressed.

As there were twenty-two counts in the information and twenty-six witnesses were endorsed upon it at the time it was filed, and others later, it would *prima facie* appear that a little more than three weeks was a rather short time for preparation. It was, however, called to the attention of the respective judges who ruled on the motions for continuance that neither the appellant nor his attorney was compelled to start from scratch in the preparation of the matter.

In January, the matters with which the information is concerned were quite thoroughly probed by a grand jury which had the appellant and his records before it on several occasions. In fact, at that time, the appellant and Mr. Beardslee went to Portland and interviewed quite a number of the same witnesses who were subsequently endorsed on the information and testified at the time. The grand jury returned an indictment concerning the very matters covered by the information, which indictment the appellant, with Mr. Beardslee as his attorney, successfully attacked and set aside. The information was then filed. No doubt, other matters which do not appear in the record were called to the attention of the judges who ruled on these motions. We find nothing in the circumstances to indicate that they or either of them were guilty of an abuse of discretion in the premises, and the statement of facts shows that, in spite of the short notice of trial, the appellant was ably and skillfully defended.

An understanding of other questions raised on appeal requires a setting out in full of the charging part of at least one of the perjury counts. We select that of Count Three as typical:

"He, said JOSEPH P. DODD, in the County of King, State of Washington, on or about the 7th day of May, 1936, wilfully, unlawfully, feloniously and knowingly did swear falsely in writing as follows, to-wit:

30

" 'CLAIM FOR EXPENSES

King County, Washington. To J. P. DODD Dr.

| DATE | NATURE OF EXPENSES | AMOUNT |
|---|---|---|
| April 1 to April 30, 1936: | | |
| | 4 Round trips to Portland (April 2, April 13, April 18, April 30) (a) 15.88 ea. under the direction of Bureau of Public Roads for PWA Projects, | 65.52 |
| | 6 meals (a) 65c each, | 3.90 |
| | 1 hotel bill, | 2.75 |
| | Olympia, 3 trips (WPA projects) 4 meals (a) 65c | 2.60 |
| | Everett, 3 trips, Lake Ballinger Road Rev'n and WPA projects, 4 meals (a) 85c | 3.40 |
| | | $78.17 |

" 'Chapter 104, Laws of 1929

STATE OF WASHINGTON, ⎫
COUNTY OF KING ⎬ ss
 ⎭

" 'I, J. P. DODD, holding the office of COUNTY ENGINEER, having herewith presented my itemized account for expenses for the period ending April 30, 1936, amounting to the sum of SEVENTY-EIGHT AND 17/100 DOLLARS, do hereby, having been first duly sworn, depose and say: That the foregoing account is just and true as therein stated: that no payment has been received by me on account thereof; that no rebate of any character, kind or description has been made to me by any person or persons furnishing any of said transportation or subsistance; that the expenses charged were actually and necessarily incurred and paid by me in lawful money. J. P. DODD,
 Signature of Claimant

" 'Subscribed and sworn to before me this 7th day of May, A. D. 1936

Claim certified as correct: N. C. ANDERSON,
J. P. DODD, Notary Public
Head of Department Title of Officer
 Administering Oath
(SEAL) (SEAL)'

that said writing was sworn to before the notary public mentioned therein who was at said time a notary public regularly commissioned and qualified under the laws of the State of Washington; that said defendant, JOSEPH P. DODD, was at said time the County Engineer of the County of King, State of Washington, and that he subscribed and swore to said affidavit with expense account attached and that the same was, as defendant well knew, false and untrue for the reason that the account was not a just and true account as therein stated, in this, to-wit: that the defendant, JOSEPH P. DODD had not actually and necessarily incurred and paid the sums mentioned in the first three items of the claim for expenses and had not made four round trips to Portland for the purpose of going to the Portland office of the U. S. Bureau of Public Roads in connection with W. P. A. nor had he gone to Portland for any purpose connected with his duties as County Engineer or for any purpose in connection with any business of King County or of the State of Washington.

"Contrary to the statute in such case made and provided and against the peace and dignity of the State of Washington."

While all of the perjury counts are in the same general form, the items in the respective expense accounts are not all stated in the same way. Taking the counts as a whole, there are charges in the expense accounts for thirty round trips to Portland, Oregon, during the eleven months. Of these, twelve are itemized as being made in connection with business with the U. S. Bureau of Public Roads. Eleven are trips on P. W. A. projects to Portland, or trips to Portland on P. W. A. construction jobs and seven are simply listed as trips to Portland. Of the thirty trips, seventeen are expressly charged at $15.88 each, ten in multiples of that amount, and three in Count Seven on a mileage basis of five cents per mile.

It may be noted parenthetically at this point, that $15.88 was the round trip airplane fare from Portland

to Seattle during the eleven months in question, and, as it was shown that no other method of public transportation charged that rate, its appearance on the expense accounts as a charge for a trip is equivalent to a representation that the trip was made by airplane.

Appellant assigns as error the overruling of his demurrer to each of the eleven perjury counts and the denial of his motion in arrest of judgment. It is argued that these counts do not charge perjury in the second degree, in that there is no allegation that appellant swore to the affidavits with intent that they be "uttered and published as true," citing *State v. Dalzell,* 135 Wash. 621, 238 Pac. 635. The affidavit in that instance was made for the purpose of securing a new trial of a case to which the affiant was not a party. The court held that the mere allegation that the affidavit was afterwards filed in court was not equivalent to an allegation that the defendant intended that it should be, he having no direct interest in the matter.

"But the mere fact that it was so used is by no means equal to a charge that the respondent made the affidavit for that purpose, or that he knew it was to be, or consented that it should be, used in that connection. It might have been used in that case, not only without respondent's knowledge or consent, but against his express wishes."

But here the claims were set out in full in the respective counts, consisting in each instance of the expense account, the affidavit of the appellant certifying to its correctness, and besides that, the appellant's signed approval of the claim as head of the department. Surely, this notified the appellant that it would be contended that he uttered and published the affidavits as true. When the facts constituting a crime are so stated in the information that a man of common understanding can determine therefrom the offense

with which he is charged, the information is sufficient. *State v. Wray,* 142 Wash. 530, 253 Pac. 801; *State v. Vaughan,* 163 Wash. 681, 1 P. (2d) 888.

The appellant contends that the court erred in not granting his motion for a directed verdict. The state had the difficult burden of proving a negative. It could meet that burden in at least two ways; by showing that the Portland trips were not made, or, if made, that they were not made on county business. One of the ways of showing that they were not made on county business was by affirmatively showing that they were made on other business or for some other reason. The state employed all of these methods.

Mr. Lynch, District Engineer in charge of the office of the U. S. Bureau of Public Roads at Portland, Oregon, was called, and testified, in substance, that he did not see appellant more than two or three times during 1936, and he knew of no reason why appellant should have come to that office at all, since all county engineers were expressly requested, by letter, not to do so, but to submit matters through their respective state highway departments. Similar testimony was given by Mr. Andrews, principal assistant to Mr. Lynch, by Mr. Parsons, senior engineering aide, and by Mr. Morris, highway engineer in charge of Federal aid projects for the state of Washington.

It was also brought out that, in January, 1937, when the appellant was under fire before the King county grand jury, the appellant, accompanied by his attorney, Mr. Beardslee, called at the U. S. Public Roads office in Portland and asked for a letter stating that he had called there on numerous occasions in 1936. They were told that a letter could only be furnished upon written request. The letters exchanged as a result were put in evidence. The appellant's letter to Mr. Lynch reads as follows:

"You are probably aware of the investigation being conducted here and I am writing this letter to you with the request of an answer from you to the effect that as County Engineer I have had occasion to confer with you and various members of your staff in connection with the P. W. A. projects which King County handled through your department.

"It is unnecessary that you go into detail but merely send a letter to the effect that I have had occasion to visit Portland on numerous occasions during the past two years.

"Thanking you for an early reply, I beg to remain, . . . ."

After the matter had been discussed by and between Messrs. Lynch, Andrews, Caufield, and Morris, a reply, signed by Lynch and Andrews, was made, as follows:

"We refer to your letter of January 28, 1937 regarding your official contacts with this office during the past two years.

"Your reference is presumably to matters in connection with PWA projects in King County with which this Bureau is concerned.

"It should be borne in mind that we do not attempt to keep accurate date records of the visits of all the representatives of the agencies that have occasion to consult with us, and for that reason we are unable to be specific but must depend upon the memory of several engineers as to the number of visits. The District Engineer recalls not to exceed three visits and his assistants approximately four visits but not to exceed six during the period in question."

It will be noted that the letter covers a period of two years, which is twice the period with which we are concerned.

Evidence was introduced by calling a Portland attorney and other witnesses that, early in 1936, the appellant purchased a block of stock for Miss Marie Bugg in a corporation operating the Castle roadhouse

near Portland, and that the owner of the ground on which the roadhouse stood also owned an adjoining cottage which Miss Bugg rented and occupied, the appellant on one occasion physically paying the rent therefor; that appellant was seen about the premises on many occasions, as many as ten or fifteen times between April and November. There was evidence that appellant stayed overnight at the Bugg cottage. The state offered other evidence tending to show that the relation between appellant and Miss Bugg was not exclusively of a business nature. The trial judge excluded an offer to prove that in February appellant bought a five hundred dollar airplane script book and took Miss Bugg on a trip to Washington, D. C., other eastern cities, and Los Angeles, and later attempted to collect the cost of the book from the county.

The appellant did not testify, but portions of his evidence given before the grand jury were read at the trial. In that investigation, the appellant had serious trouble in justifying his hotel charges on the Portland trips. It being shown by hotel registers that he had not stayed at hotels on many of the dates for which charges were made, he testified that he frequently stayed with friends, paying, however, hotel rates. He was given time to procure evidence as to this, and, after a visit to Portland with his attorney, he came back with two letters. The first of these, written under the letterhead of the Hotel Multnomah, reads as follows:

"Portland, Oregon
Jan. 30, 1937

"To anyone interested during the past year ending Dec. 29, 1936, Mr. J. P. Dodd has been a guest of ours for about 15 or 20 times and on various occasions I have furnished him transportation from and to the airport on other occasions he arrived with his own personal car. VINCENT J. WALSH."

The second is as follows:

"Jan. 28, 1937.

"To whom it may concern:

"Mr. J. P. Dodd, during the past year ending about August 1st has been a guest of mine between ten and fifteen different occasions. On several of these times I have picked him up and delivered him back to the airport. On other occasions he visited me using his own transportation. G. O. BENSON
2535 N. W. Savier St.,
Portland, Ore.
Be 4876"

Benson, the writer of the second letter, testified at the trial. He was a musician in the Castle roadhouse band. In the first part of May, he received some stock in the Castle, Inc., partly in lieu of back wages, and partly on a promissory note which he made in favor of the appellant Dodd for $450. Walsh and Benson wrote the letters, above quoted, after a conference with appellant and Mr. Beardslee. Benson testified that his letter did not mean that appellant was a guest at his house, but that he stayed at the Castle. Asked to explain the language in this letter that Dodd had been "a guest" of his on ten or fifteen different occasions, he said that, since he owned stock in the corporation, he figured that Dodd was his guest. This witness further testified that Walsh, who wrote the letter first quoted, was also merely a member of the roadhouse band. Four or five other witnesses testified to appellant's frequent presence at the Castle roadhouse in 1936.

The appellant was found guilty, count by count. He now contends that there is only general evidence of guilt, and that the state cannot point to any evidence in the record and say, this tends to prove Count One and this Count Two, and so on. We think it can. United Air Lines keeps a record of its passengers. It

appears from the evidence given by its manager that, of the twenty-seven round airplane trips to Portland charged for in the eleven expense accounts, the appellant made but six round trips and one one-way trip from Seattle to Portland; one round trip where appellant charges three on the expense bill set out in Count One; none where he charges three, Count Two; one where he charges four, Count Three; none where he charges two, Count Four; one where he charges four, Count Five; two where he charges three, Count Six; one where he charges two, Count Eight; none where he charges two, Count Nine; one one-way trip where he charges two round trips, Count Ten; none where he charges two round trips in Count Eleven.

A similar hook-up can be made to some of the counts by the use of the hotel registers. There is other direct testimony affecting some of the counts. For example, in the expense bill set out in Count Four, the appellant charged for four round airplane trips to Portland in April. These trips are stated to have been made on April 2, 13, 18, and 30. He made the April 2d trip only. It was, however, shown that appellant charged gas to the county for King county car No. 602480 at Portland on April 22 and 23, and at Castle Rock, Washington, on April 29, 1936.

We find no evidence which directly pertains to Count Seven, in which there were no hotel charges, the only charges being the following:

"1600 miles (a) 5¢ per mile for use of private car in pursuit of county engineer's duties to Portland (3 round trips) Olympia (4 round trips) $80.00."

On that count, the jury must have found the appellant guilty on general principles.

The evidence submitted on behalf of the appellant was slight in character and wholly devoted to an attempt to show, by two employees of the county engi-

neer's office, that there were more occasions to consult the U. S. Public Roads officers at Portland than the evidence submitted by the state would indicate. Except as to that point, the state's evidence stood wholly unqualified and uncontradicted.

The jury was undoubtedly warranted in finding the appellant guilty of the crime charged in each and all of the perjury counts, except Count Seven.

■ Appellant assigns as error that he was prevented from cross-examining the notary before whom the various affidavits or certificates were sworn. On direct examination, the notary identified each of the instruments forming the basis of the perjury counts and testified that the appellant signed the certificates and that he himself executed the jurat. When he was turned over to appellant's counsel for cross-examination, he was asked: "You never actually swore Mr. Dodd on any of those certificates, did you?" The state objected to this question as immaterial, and the jury was withdrawn. In their absence and after argument, the court ruled that a notary public who affixes his signature and seal and certifies that a man has acknowledged a paper before him or has sworn to a paper before him, is forever estopped from denying the truth of his certificate.

We do not pause to inquire whether or not this ruling is consistent with the weight of authority, but it is clear that the rule announced by the court is much broader than that which has hitherto prevailed in this state; *Campbell v. Campbell*, 146 Wash. 478, 263 Pac. 957; and, if the matter had stopped there, the question presented by this assignment would have been serious indeed. However, the appellant, in the absence of the jury, went on to make an offer of proof from which it appears that he merely desired to ask the witness whether Dodd raised his hand and said: "I swear the

foregoing facts to be true," or "I swear to the foregoing." The court held, we think rightly, that this was immaterial. That Dodd actually signed each of the affidavits or certificates to which the jurat is attached, was not disputed. These certificates were in the form provided by statute, and he well knew that the law requires that a county officer, in order to establish and collect an expense account, must make oath and sign the certificate, and that the claim, to be complete, must then be approved by the head of the department. The certificates which he signed were in the form provided by statute and read, in part, as follows:

"STATE OF WASHINGTON ⎱ ss
COUNTY OF KING ⎰

"I, J. P. DODD, holding the office of COUNTY ENGINEER, having herewith presented my itemized account for expenses for the period ending . . . amounting to the sum of . . . , do hereby, *having been first duly sworn,* depose and say . . ." (Italics ours.)

He thus not only certified in writing in each case that he had been "duly sworn," but he certified to that fact a second time when he approved the claim in writing as head of the department. It was, doubtless, for the purpose of foreclosing such contentions as are here made that the legislature enacted the following statute:

"It shall be no defense to a prosecution for perjury that an oath was administered or taken in an irregular manner . . . It shall be sufficient that he actually gave such testimony or made such deposition, certificate or affidavit." Rem. Rev. Stat., § 2355 [P. C. § 9036].

■ Error is assigned with respect to the court's refusal to give appellant's requested instructions Nos. 19 and 20. The first of these relates to the good faith of the appellant in making the trips to Portland and

was sufficiently covered in instructions Nos. 12 and 22. The second, we think, was also unnecessary.

Finally, the appellant contends that he should have a new trial on account of alleged misconduct of counsel. For the most part, the alleged misconduct revolves around the fact that the state, in its opening argument, stated that it would show that appellant took Miss Bugg on an extensive airplane trip around the country, and during the trial made repeated attempts to introduce evidence to that effect.

There is sufficient evidence in the record, not all of which has been referred to in our statement of the evidence, to clearly indicate that counsel for the state had probable cause and acted in good faith. One of the ways of proving his case was to show affirmatively that matters other than county business took the appellant to Portland, and, in so doing, he was not confined to the matter of the roadhouse alone. Any evidence tending to show that sex appeal was a magnet drawing the appellant to the vicinity of Portland was distinctly relevant. The fact that the trial judge, in the exercise of his discretion, mercifully refused to permit the state to pursue that angle of the case, in no way establishes misconduct on the part of the state's counsel; nor do we think it is established by any of the other matters complained of.

Except as to Count Seven and the correlative larceny Count Eighteen, the judgment and sentences appealed from are in all respects affirmed.

STEINERT, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.