[Nos. 32472, 32473.   Department Two.   April 15, 1954.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNEST HEYES, *Appellant.*[1]

[1]Reported in 269 P. (2d) 577.

*Sather, Livesey & Kingsbury*, for appellant.

*Tom A. Durham* and *Jack Rowles*, for respondent.

SCHWELLENBACH, J.—Appellant was charged in two separate informations with the crimes of perjury and larceny. The two actions were consolidated and were tried as one case. Appellant appeals from convictions on both informations.

The appellant has for many years been the president and general manager and, with the exception of one share of stock issued to his wife, the sole owner of Whatcom-Skagit Collectors, a corporation engaged in the business of collecting debts and accounts. Sometime during the spring of 1949, Albert Solene, an employee of the collection agency, had a conversation with Lewis Bartell, a filling station and grocery store operator, in which he attempted to obtain for the collection agency an account which was owed to Bartell by one Floyd W. Adams, Jr. Bartell testified that he did not

want the account collected by the collection agency, but told Solene that he would appreciate any action that Solene might take with a view to locating Adams. Later that day, Solene turned in the account to the collection agency and told other employees there to commence suit on it. A complaint was prepared and signed by R. W. Greene, as attorney for Whatcom-Skagit Collectors, and verified by appellant on May 3, 1949. The complaint contained two causes of action; one against Adams on the Bartell account and the other against Adams on an account for the B. B. Furniture Company. The fourth paragraph of the Bartell cause of action stated:

"That prior to the commencement of this action the above mentioned account was duly assigned in writing to Plaintiff herein for collection who is now the owner and holder thereof."

The above allegation was in fact false, and it constitutes the basis for the perjury charge.

About a year later, the collection agency garnished Adams' then employer. Adams went to see Bartell, and after some discussion, Bartell called Heyes on the telephone about the account. The conversation seems to have consisted of a claim by appellant that he had the account for collection and a denial by Bartell that he had ever assigned it. Adams then went to see appellant, and the question of the ownership of the account was discussed. September 8, 1950, Adams signed an order on his employer to pay the accounts, including Bartell's, to the collection agency at the rate of twenty-five dollars every two weeks, the money to be deducted from his pay check. Some fifty or sixty dollars was collected under this arrangement.

During the summer of 1951, while Adams was employed in Alaska, the employer was served with a writ of garnishment. The employer, Pacific American Fisheries, obtained an attorney, who prepared an answer to the writ. When Adams returned from Alaska, he went to see the attorney for the fisheries company, who called appellant with respect to making a settlement for all the accounts which the collection agency had against him. Adams, in company with

his wife, then went to the office of Mr. Greene, the attorney for the collection agency, and all of the claims against Adams were compromised for a cash payment of two hundred dollars. The Bartell account was one of those settled. Mr. Greene then paid the two hundred dollars to appellant, who charged one half of the money collected as a collection fee and mailed a check to Bartell in the sum of $57.15, which represented the other one half. When Bartell learned of the collection of the money from Adams, he called appellant on the telephone, and an argument ensued as to whether the collection agency had the right to collect the account. After receiving the check, Bartell again called appellant and demanded the other one half of the money collected. Appellant refused to give him the money and suggested that Bartell commence a "friendly suit" to litigate the ownership of the money. Instead of so doing, Bartell went to the prosecutor, and these criminal charges were preferred. The withholding of the $57.15 constitutes the basis of the prosecution for larceny.

As to the perjury charge, appellant contends that there was not sufficient evidence to go to a jury on the issue of whether or not there was a valid swearing to the verification of the complaint. It was as follows:

"STATE OF WASHINGTON \
"COUNTY OF WHATCOM } ss.

"ERNEST HEYES, being first duly sworn on oath deposes and says: That he is President for the Plaintiff Corporation named in the above entitled action; that he has read the foregoing complaint, knows the contents thereof, and the same are true as he verily believes.

"/signed/ ERNEST HEYES

"SUBSCRIBED and SWORN to before me this 3rd day of May, 1949.

"/signed/ R. W. GREENE

"NOTARY PUBLIC in and for the State of Washington, residing at Bellingham."

At the trial, the state called R. W. Greene, the notary public, as its witness. The following occurred:

"BY MR. DURHAM:

"Q. I will hand you, Mr. Greene, what has been marked Plaintiff's Exhibit 'A' for identification and show you the verification of a complaint. Do you recognize that signature there, the notary public signature? A. I do. Q. Whose signature is it? A. Mine. Q. And do you recognize the signature of the person making the jurat? A. That is the signature of Ernest Heyes. Q. And at the time he made that jurat he deposed and swore before you, a notary public? A. You mean, did I take the oath? Q. Yes. A. No. Q. But he swore to this?

"Mr. KINGSBURY: Just a minute. I think he is cross-examining his own witness, Your Honor. I think he can ask the questions. A. Tommy, I can tell you exactly what happened. Q. Very well. A. In the course of my acting for the Whatcom-Skagit Collectors, in a period of about twelve years I have signed, to be exact, 6,868 complaints in Superior and Justice Courts, all of which had been signed by Heyes. In addition there were many garnishments; like in this case, there were five garnishments. But the oath was not actually administered— Q. Just a minute. Just a minute. A. I might clarify that a little bit more, Tommy. Q. No, just a minute. . . ."

The foregoing testimony, together with the verification quoted above, constitutes the entire proof of swearing under oath, which is an element of the crime of first-degree perjury. After the verdict, appellant moved in arrest of judgment in the perjury case on the ground that the state had failed to prove that appellant swore under oath, and assigns error in the failure of the trial court to grant such motion.

The trial court felt that it was bound by our decision in *State v. Dodd*, 193 Wash. 26, 74 P. (2d) 497, which was a prosecution against a county engineer for falsely swearing to certain expense accounts. In affirming the judgment, we said as to perjury:

"Appellant assigns as error that he was prevented from cross-examining the notary before whom the various affidavits or certificates were sworn. On direct examination, the notary identified each of the instruments forming the basis of the perjury counts and testified that the appellant signed the certificates and that he himself executed the jurat. When he was turned over to appellant's counsel for cross-examination, he was asked: 'You never actually swore Mr.

Dodd on any of those certificates, did you?' The state objected to this question as immaterial, and the jury was withdrawn. In their absence and after argument, the court ruled that a notary public who affixes his signature and seal and certifies that a man has acknowledged a paper before him or has sworn to a paper before him, is forever estopped from denying the truth of his certificate.

"We do not pause to inquire whether or not this ruling is consistent with the weight of authority, but it is clear that the rule announced by the court is much broader than that which has hitherto prevailed in this state; *Campbell v. Campbell*, 146 Wash. 478, 263 Pac. 957; and, if the matter had stopped there, the question presented by this assign-. ment would have been serious indeed. However, the appellant, in the absence of the jury, went on to make an offer of proof from which it appears that he merely desired to ask the witness whether Dodd raised his hand and said: 'I swear the foregoing facts to be true,' or 'I swear to the foregoing.' The court held, we think rightly, that this was immaterial. That Dodd actually signed each of the affidavits or certificates to which the jurat is attached, was not disputed. These certificates were in the form provided by statute, and he well knew that the law requires that a county officer, in order to establish and collect an expense account, must make oath and sign the certificate, and that the claim, to be complete, must then be approved by the head of the department. The certificates which he signed were in the form provided by statute and read, in part, as follows:

'STATE OF WASHINGTON }
                         } ss.
'COUNTY OF KING        }

" 'I, J. P. DODD, holding the office of COUNTY ENGINEER, having herewith presented my itemized account for expenses for the period ending . . . amounting to the sum of . . . , do hereby, *having been first duly sworn*, depose and say . . .' (Italics ours.)

"He thus not only certified in writing in each case that he had been 'duly sworn,' but he certified to that fact a second time when he approved the claim in writing as head of the department. It was, doubtless, for the purpose of foreclosing such contentions as are here made that the legislature enacted the following statute:

" 'It shall be no defense to a prosecution for perjury that an oath was administered or taken in an irregular manner . . . . It shall be sufficient that he actually gave such tes-

timony or made such deposition, certificate or affidavit.' Rem. Rev. Stat., § 2355 [P. C. § 9036]."

In *Campbell v. Campbell*, 146 Wash. 478, 263 Pac. 957, referred to in the *Dodd* case, we said:

"The first of the contentions in this behalf is that the notary was not competent as a witness to impeach his certificate to the deed, and hence his testimony, to the effect that it was James and not Edward who appeared before him and acknowledged the execution of the deed, should not have been admitted in evidence by the trial court and cannot be considered by this court, which must try the cause *de novo.*

"The question suggested is one upon which the courts have taken discordant views. Without attempting to collate the cases, an examination of them will show that the differences of opinion on the question arise largely from the view taken of the nature of an acknowledgment. In some jurisdictions, the act of an officer in taking and certifying to an acknowledgment is held to be judicial, or quasi judicial, in its nature, and consequently can be attacked only in the manner and for the causes a judgment of a court of record can be attacked. Courts taking this view of an acknowledgment hold that the officer taking it will not be permitted to stultify it in a collateral proceeding, although some of them hold that he may so testify, where the proceeding is a direct attack upon the instrument, as, for example, in a direct proceeding brought to set aside the instrument for fraud.

"The other view is that the act is ministerial rather than judicial, and courts taking this view generally hold that the officer is a competent witness to impeach the certificate. This court, in so far as we are advised, has never had the direct question before it. We have held, however, that the act was ministerial rather than judicial; *Spokane & Idaho Lumber Co. v. Loy*, 21 Wash. 501, 58 Pac. 672, 60 Pac. 1119; *Keene Guaranty Savings Bank v. Lawrence*, 32 Wash. 572, 73 Pac. 680; *Ehlers v. United States Fid. & Guar. Co.*, 87 Wash. 662, 152 Pac. 518; and to this extent have adopted the rule of the cases which hold the evidence of the officer taking the acknowledgment competent to impeach it. In *Thompson v. Schoner*, 58 Wash. 642, 109 Pac. 116, we held that it made no difference in what form of action the question arises; that is, whether in an action brought directly to set aside the instrument or in a collateral proceeding, evidence to impeach an instrument on this ground was admissible. In *Chaffee v. Hawkins*, 89 Wash. 130, 154 Pac. 143,

157 Pac. 35, a case where the question was whether parties who had signed a deed were competent as witnesses to question its authenticity, we used this language:

" 'Appellant contends that one who has signed a deed will not be heard to question it or to challenge the certificate of the notary who has taken and certified to his acknowledgment. There is abundant authority to sustain this premise, but we think the better doctrine is that a grantor may impeach such certificate for fraud or other reasons finding sustenance in any of the recognized principles of equity.' "

See, also, *State v. Wilson*, 83 Wash. 419, 145 Pac. 455, for a thorough discussion of the subject of perjury in the first degree.

Perjury in the first degree is defined in § 99, chapter 249, Laws of 1909, p. 920 [*cf.* RCW 9.72.010]:

"Every person who, in any action, proceeding, hearing, inquiry or investigation, in which an oath may lawfully be administered, shall swear that he will testify, declare, depose or certify truly, or that any testimony, declaration, deposition, certificate, affidavit or other writing by him subscribed is true, and who in such action, proceeding, hearing, inquiry or investigation shall state or subscribe as true any material matter which he knows to be false, shall be guilty of perjury in the first degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years."

The elements of the crime of perjury are stated in *Stewart v. State*, 25 Ala. App. 155, 142 So. 590:

"In a prosecution for perjury the evidence, as in all criminal cases, must be of the character which is sufficient to convince the jury beyond a reasonable doubt and to a moral certainty that the defendant is guilty as charged. The evidence in a case of this character must show: (1) That a lawful oath had been administered to the defendant by an officer having the authority to administer it; (2) that under said oath the witness must have sworn falsely as to a material matter involved in some judicial proceeding or legal trial; (3) that such false swearing must have been willfully and corruptly done by the defendant within the period of time covered by the indictment, and in the county where the prosecution is pending. In other words, perjury is a corrupt, willful, false oath, taken in a judicial proceeding, in regard to a matter or thing material to a point involved in

the proceeding. In the event of the failure of the proof to establish either of these propositions, the case must fall."

■ A first-degree perjury prosecution may be based on a verified complaint containing false allegations regarding material matters. *People v. Godines*, 17 Cal. App. (2d) 721, 62 P. (2d) 787.

It is a matter of common knowledge that, in many instances, notaries acknowledge signatures to claims, affidavits, depositions, and verifications without the signer actually being present; and also that quite often, when the signer is present, nothing is said about an oath and no thought is given to it whatever, thus raising a serious doubt as to whether a solemn oath had actually been administered by the notary and taken by the signer. We do not approve of this practice. However, we feel that primarily this is a problem for the legislature, rather than for the courts.

■ In the case at bar, we do not find it necessary to express an opinion as to whether or not it would have constituted sufficient proof of the administering of an oath if the state had merely offered the complaint, including the verification, and had proved the signatures of the defendant and the notary. But that was not done here. The state, as part of its proof, asked the notary: "And at the time he made that jurat he deposed and swore before you, a notary public?" To that question the notary answered, "No." The state completely failed to prove one of the essential elements of the crime of first-degree perjury, and it was error to deny the motion in arrest of judgment.

The larceny charge was predicated on the fourth subdivision of the larceny statute, which reads:

"Every person who, with intent to deprive or defraud the owner thereof— . . .

"(4) Having received any property by reason of a mistake, shall with knowledge of such mistake secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . .

"Steals such property and shall be guilty of larceny." § 3, chapter 165, Laws of 1915, p. 493 [*cf.* RCW 9.54.010].

Appellant contends that the statute contemplates only a mistake on the part of the person appropriating the property to the use of himself or another, and that the charge will not lie when based on the mistake of another person.

In *State v. Tharp*, 42 Wn. (2d) 494, 256 P. (2d) 482, the defendant was charged under subdivision (4). He was a ranch foreman who had been instructed by the owner to butcher one of her black Angus heifers. By mistake he shot a red steer belonging to someone else. He immediately realized his mistake, but proceeded to butcher the animal and then concealed its head and hide. We there held that it was proper to charge under subdivision (4).

■ However, we feel that appellant was properly charged in the instant case. He was alleged to have received the money by reason of a mistake. The statute does not limit the receiving of the property to the mistake of the person charged. The gravamen of the offense is the appropriation of the property after having received it "by reason of a mistake."

Section 356, chapter 249, Laws of 1909, p. 1000 [*cf.* RCW 9.54.120] provides:

"In any prosecution for larceny it shall be a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though the claim be untenable."

■ Appellant proposed an instruction in the language of the statute, which was refused. We have held that refusal to give the instruction based on the statutory defense is, in other than larceny by false representation, reversible error where there is evidence upon which the instruction could be based. *State v. Carr*, 160 Wash. 74, 294 Pac. 1013; *State v. Crossen*, 77 Wash. 438, 137 Pac. 1030; *State v. Rolette*, 94 Wash. 94, 161 Pac. 1042.

It is contended that the substance of the proposed instruction was given in instruction No. 18:

"You are instructed that 'mistake' may be defined as that result of ignorance of law or of fact which has misled a person to commit that which, if he had not been in error, he would not have done. Thus, in considering Count II and the

matter of defendant's intent, if you find that a mistake was made, you must further find beyond a reasonable doubt that defendant had knowledge of the mistake. In this connection you may consider whether defendant believed or had reasonable cause to believe that he had the legal right to collect the account by suit, and any other circumstance in the case bearing on the question of defendant's knowledge and intent. If you then have a reasonable doubt as to defendant having had a criminal intent, you should give him the benefit of that doubt and acquit him as to Count II."

The record is replete with testimony on the part of appellant and his employees that they honestly believed that the account had been assigned. This testimony, if believed by the jury, would have been a perfect defense to the charge of larceny. Although instruction No. 18 touches on this defense, still, we feel that appellant was entitled to have that matter pin pointed in the exact language of the statute, that it would be "a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though the claim be untenable."

The judgment and sentence in the perjury charge is reversed and remanded, with direction to grant the motion in arrest of judgment.

The judgment and sentence in the larceny charge is reversed and remanded, with direction to grant a new trial.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.

---

May 28, 1954. Petition for rehearing denied.