[No. 1161-2.    Division Two.    December 9, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM B. LEWIS, *Appellant.*

Richard J. Thorpe and Elvidge, Veblen, Tewell, Bergmann & Taylor, for appellant.

John C. Merkel, Prosecuting Attorney, for respondent.

PEARSON, C.J.—The defendant in this action, William B. Lewis, appeals from convictions on one count of second-degree perjury and two counts of grand larceny by possession of stolen automobiles.

On two occasions the defendant acquired stolen vehicles similar in make and model to ones owned by him. In July of 1972 the defendant applied for replacement license plates for his Ford Pinto, claiming by affidavit that the plates originally issued to him had been lost. The form affidavit was prefaced with the words: "I, ............................................., being duly sworn on oath depose and say that . . .." The defendant signed the affidavit in the office of a notary public who was not present at the time of the signing. Later an employee of the notary presented the latter with the affidavit. The notary recognized the defendant's signature, signed the affidavit, and affixed his seal. Several months later the replacement license plates which the defendant received were discovered on the stolen Ford Pinto in his possession, and the original plates were observed on the defendant's own Ford Pinto.

The defendant was also convicted for the possession of a stolen Ford pickup truck. Exhibit 29, admitted into evi-

dence over defendant's objection, was an affidavit executed by an apparent accomplice of the defendant (who was not charged) attesting to the loss of license plates on a Ford pickup truck owned by the defendant.

The defendant further objected to the admission of exhibits 10 and 37. Exhibit 10 was a statement made to a police officer in which the defendant used the word "we" throughout (in reference to himself and his accomplice) rather than the subject pronoun "I." After the defendant's arrest, the police removed the license plates from both the defendant's Pinto and the stolen Pinto. Exhibit 37 is an affidavit executed by the defendant as part of the application for replacement plates for one of those vehicles, stating that the original plates were "stolen" by the police.

The principal question before the court in this case is whether a conviction for perjury may be sustained by an unsworn affidavit, not signed in the presence of a notary public. The other issues on this appeal relate to the aforementioned exhibits, and to the sufficiency of the evidence on the three counts of the information for which defendant was convicted. We hold that the July 1972 affidavit which was the subject of the perjury charge was fatally defective, so that the conviction must be reversed. We uphold, however, the grand larceny convictions.

The second-degree perjury statute under which the defendant was convicted, RCW 9.72.030, requires a knowingly false swearing. RCW 9.72.040 provides that any statement made under oath in a *mode authorized* by law is a swearing. The mode authorized for obtaining replacement vehicle license plates is a swearing *before* a notary public. RCW 46.16.270. RCW 5.28.020 prescribes the form of the oath, but RCW 9.72.050 states that irregularity in the administration of the oath is not a defense to perjury.

Two Washington decisions on this subject seem to dispense almost entirely with a ceremonial act of swearing, *i.e.*, the formal administration of an oath. *State v. Douglas*, 71 Wn.2d 303, 428 P.2d 535 (1967); *State v. Dodd*, 193

Wash. 26, 74 P.2d 497 (1937). In both cases, however, the official authorized to administer the oath was present. Further, the implication from those decisions is that Washington is in accord with the weight of authority holding that to sustain a conviction for perjury it must at least be shown that the affiant was conscious of the obligation of the oath. *See* 3 R. Anderson, *Wharton's Criminal Law and Procedure* § 1297 (1957); Annot., 51 A.L.R. 840 (1927).

Of greater assistance is the decision in *State v. Heyes,* 44 Wn.2d 579, 269 P.2d 577 (1954), in which the notary testified that the affiant had not sworn before him. The court did not indicate whether or not the notary was in fact present at the signing. The elements of the crime of perjury were set out by the court, the first one being that a "lawful oath had been administered to the defendant by an officer having the authority to administer it; . . ." *State v. Heyes, supra* at 586 (quoting from *Stewart v. State,* 25 Ala. App. 155, 142 So. 590 (1932)). The court reversed the perjury conviction because the State had failed to prove—in fact had disproved—this essential element of the crime.

In *State v. Epstein,* 138 Wash. 118, 244 P. 388 (1926) the court held that the failure of the notary to affix his seal was more than an irregularity. It rendered the instrument fatally defective.

Numerous jurisdictions have perjury laws which provide, as does RCW 9.72.050, that an irregularity in the administration of the oath is not a defense to the crime. But a judicial limitation has been placed on this rule to the effect that a perjury conviction will not be upheld when there was not substantial compliance with the statutory requirements. 70 C.J.S. *Perjury* § 24 (1951).

In *O'Reilly v. People,* 86 N.Y. 154, 40 Am. R. 525 (1881) the court was presented with a factual situation substantially similar to the one in the instant case. The court reasoned that the portion of the affidavit which read that the affiant had been "duly sworn" did not constitute proof

that an oath had actually been administered. In reversing the conviction, the court stated, in *O'Reilly v. People, supra* at 161:

> To make a valid oath, for the falsity of which perjury will lie, there must be in some form, *in the presence of an officer authorized to administer it,* an unequivocal and present act, by which the affiant consciously takes upon himself the obligation of an oath. The delivery in this case of the signed affidavit to the officer was not such an act, and was not made so by the intention of the one party or the supposition of the other.

(Italics ours.)

In *People ex rel. Greene v. Swasey,* 122 Misc. 388, 203 N.Y.S. 22 (1924) the court held that the statutory provision vitiating the defense of irregularity in the administration of the oath would not cure the defect created by an inspection agent who signed the jurat out of the presence of the defendant at a later time, no oath having been administered at all. The court declared that the statute applies

> only to cases where some oath was administered, but administered in a manner defective in form. It does not create the obligation of an oath, where it has not been consciously assumed in some form; it cannot cure that which never had life enough to be sick.

*People ex rel. Greene v. Swasey, supra* at 391. *See Lowry v. State,* 164 Tex. Crim. 178, 297 S.W.2d 848 (1956) (reversal of a perjury conviction because the prosecution offered no proof the defendant had appeared before a notary or that any sort of oath was administered, even though the jurat appeared regular in form).

In the instant case, not even the semblance of an oath was taken by the defendant. The prefacing words of the affidavit merely recited a supposed past event which had not in fact occurred. Nothing whatsoever took place *before,* (*i.e.,* in the presence of) the notary. We believe, therefore, that there was no substantial compliance with RCW 46.16.270. To hold otherwise would vitiate the provi-

sions of that statute and would be in violation of the rule requiring criminal statutes to be strictly construed. *State v. Lewis,* 46 Wn.2d 438, 282 P.2d 297 (1955). We do not question the authority of the legislature to impose any reasonable requirements for the crime of perjury. It could have dispensed entirely with the requirement of swearing, as it did in RCW 42.24.100, a reimbursement for expenses statute. *See State v. Mundy,* 7 Wn. App. 798, 502 P.2d 1226 (1972). It has not done so in this case. RCW 46.16.270. We therefore find, as did the court in *State v. Heyes, supra,* that the State had failed to prove an essential element of the crime of perjury, and the conviction must be reversed.

We turn now to the defendant's other assignments of error. Exhibit 10, the statement which the defendant made to the police, was properly admitted notwithstanding his use of the first person plural as the pronoun subject. There is nothing inherently confusing or ambiguous about the statement. It is evident that the "we" referred to the defendant and his accomplice, acting more or less in concert. It was competent evidence even though it implicated another person who was not charged. *See Davis v. State,* 120 Tex. Crim. 330, 49 S.W.2d 805 (1932) (admitting a statement in which the defendant used the word "we" throughout). *See also State v. McNeil,* 161 Wash. 221, 296 P. 555 (1931) (holding that evidence of a conspiracy is competent even though not charged).

We also believe that exhibit 29 was properly admitted. The exhibit evidenced a possible prior crime committed by the defendant's accomplice in order to procure license plates for the stolen Ford truck. It was relevant to show the defendant's knowledge that the truck was stolen, since he allowed the replacement plates to be placed on that truck. *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952), cited by both parties, is not precisely on point here because it concerned the admissibility of prior crimes committed by the defendant himself. But the underlying principle of that case is analogous and quite basic: the prejudicial

effect of such evidence should be weighed against its relevancy. The effect of evidence of a past crime of another person—even though linked to the defendant—is not as inflammatory as it would have been were it a prior crime committed by defendant himself. And as indicated, it was highly relevant as tending to prove the defendant's less than innocent involvement with the stolen vehicle, as well as showing a common scheme on the part of the defendant.

Exhibit 37, which was defendant's affidavit of loss of plates confiscated by the police, should not have been admitted. The circumstances surrounding that affidavit are confused, and it would be a stretch of the imagination to say that it was in furtherance of his scheme involving the stolen automobiles. But we do not believe that the admission of this exhibit affected the outcome of the case; therefore the error which was committed was harmless. *See Schneble v. Florida,* 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972).

Finally, we conclude from our review of the record that there was sufficient evidence from which the jury could infer that the Pinto, which was the subject of count 1, was in fact stolen, and that the defendant had at one time been in possession of the Ford truck, the subject of count 3, knowing it to have been stolen.

Affirmed as to the two counts of grand larceny. Reversed as to the perjury count and remanded with direction to dismiss the information in which that crime was charged.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied January 20, 1975.

Review granted by Supreme Court March 10, 1975.