[No. 3031-1.    Division One.    February 10, 1975.]

THE STATE OF WASHINGTON, *Respondent,* v. ALVIN L. GILCRIST, *Appellant.*

*Peter G. Rothschild, Public Defender,* for appellant.
*Robert E. Schillberg, Prosecuting Attorney,* and *Thomas J. Wynne, Deputy,* for respondent.

FARRIS, J.—Alvin Gilcrist was found guilty of the crime of unlawful possession of a weapon following trial to a jury. He moved for a new trial or, in the alternative, for arrest of judgment. The motion was denied and judgment was entered on the verdict. He appeals.

On the evening of February 14, 1974, Gilcrist was being transported from the Washington State Reformatory hospital to the maximum security section of the prison. While being searched, he took a knife out of his sock, ripped off the bandage covering a wound in his stomach and inserted the knife into the old wound. He removed it after approximately 10 minutes and handed it to Michael Smith, another inmate, who placed it in an existing wound of his own. The knife was finally turned over to the accompanying officer by other inmates. It had been removed from the reformatory dining room and appeared to be a butter knife or a case knife.

After the knife had been given to the officer, both inmates were returned to the hospital where they were examined by one Dale Sadler, who probed their wounds and administered aid.

Both inmates were charged and convicted of violating RCW 9.94.040, which provides:

Every person serving a sentence in any penal institution of this state who, while in such penal institution or

while being conveyed to or from such penal institution, or while at any penal institution farm or forestry camp of such institution, or while being conveyed to or from any such place, or while under the custody of institution officials, officers, or employees, possesses or carries upon his person or has under his control any narcotic drug, alcoholic beverage or any weapon, firearm or any instrument which, if used, could produce serious bodily injury to the person of another, is guilty of a felony punishable by imprisonment for not more than five years, which shall be in addition to the sentence being served.

Gilcrist assigns error (1) to the admission of the testimony of Dale Sadler, (2) to the failure to grant a new trial on the ground that Dale Sadler testified, (3) to the admission of the testimony of Detective Belinc of the Snohomish County sheriff's office, and (4) to the failure to grant a new trial on the ground that the detective's testimony was improper. He also argues that RCW 9.94.040 is unconstitutionally vague and therefore the court erred in denying his motion in arrest of judgment.

We find that the statute is not unconstitutionally vague. In clear language, it subjects to definite punishment any inmate who possesses or carries on his person or has under his control any weapon or instrument capable of producing bodily harm to another. Gilcrist argues that "any instrument which, . . . could produce serious bodily injury" can be a ball point pen and certainly a razor blade, both of which inmates are permitted to possess. Even if we agreed that the record establishes that inmates are permitted to "possess" razor blades and ball point pens, this does not render the statutory language vague. A statute is unconstitutionally vague.

[i]f men of common intelligence must guess at the meaning and differ as to its application, . . .

*State v. Malone*, 9 Wn. App. 122, 125, 511 P.2d 67 (1973); *State v. McDonald*, 74 Wn.2d 474, 445 P.2d 345 (1968). The language here is sufficiently definite to avoid that error.

Gilcrist's argument that razor blades are sanctioned and knives are not might suggest selective or arbitrary enforce-

ment and a denial of equal protection if the evidence was sufficient to raise the question. At trial, these questions were asked:

Q Officer Glebe, you have been at the State Reformatory for some time?
A Yes, eleven years.
Q Now can inmates at the State Reformatory—are they allowed to have things like ball point pens?
A Yes, they are.
Q Are they allowed to have things like razor blades?
A Yes, they are.

Statement of facts, page 96. There is nothing more in the record; but even if the possession of razor blades and ball point pens is permitted by the prison authorities, that fact fails to establish a denial of equal protection through arbitrary enforcement. *See Rhinehart v. Rhay*, 440 F.2d 718 (9th Cir. 1971); *State v. Jacobsen*, 78 Wn.2d 491, 477 P.2d 1 (1970); *State v. Rhinehart*, 70 Wn.2d 649, 424 P.2d 906 (1967).

The statutory language is capable of only one narrow construction. It prohibits certain defined conduct. It is clear on its face. The record fails to establish that it is selectively enforced nor was that alleged. We therefore affirm the failure to grant the motion in arrest of judgment.

█  Detective Belinc was properly permitted to testify regarding the volunteered statement of Gilcrist taken without advice or presence of counsel. Gilcrist indicated to the detective that he wanted to make a voluntary statement. The detective made inquiry of the prosecuting attorney's office before taking the statement and was authorized to proceed even though the prosecuting attorney knew that Gilcrist was represented by counsel and that his counsel would not be present. We find no error in the procedure. Gilcrist argues that DR 7-104 of the Code of Professional Responsibility which prohibits communication in any way between an attorney and an adverse party who is represented by counsel was violated when the prosecuting attorney authorized Detective Belinc to take Gilcrist's voluntary

statement. A similar question was before the court in *State v. Nicholson*, 77 Wn.2d 415, 419, 463 P.2d 633 (1969):

> We hold that canon 9 [canons of professional ethics] does not prohibit a prosecutor from using as evidence in the trial of a criminal case statements which were freely and voluntarily given by a person under arrest and detention to an investigating officer after that person had consulted his attorney and had been made aware of his right to remain silent or to have his attorney present when the statements were given.

The testimony of the detective regarding the statement was properly admitted since it was voluntarily made after Gilcrist had been made aware of his rights.

Dale Sadler was a "hospital supervisor" whose duties included paramedical treatment in emergencies. When Sadler observed that Gilcrist's wound was a fresh one, he was gathering information from which the attending physician would make a diagnosis and prescribe treatment, presumably without ever seeing the patient unless Sadler's report indicated the necessity of so doing. The trial court ruled that Sadler was an agent of the physician and excluded testimony concerning a discussion between Sadler and Gilcrist during the examination. The court allowed, however, testimony concerning Sadler's opinion as to the freshness of the wound.

We need not determine whether the trial court erred in either permitting Sadler to so testify or in excluding further testimony under a claim of physician-patient privilege. If there was any error committed, it was harmless error. Without Sadler's limited testimony, the jury would not have found the State's case "significantly less persuasive." *Schneble v. Florida*, 405 U.S. 427, 432, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972); *State v. Lewis*, 12 Wn. App. 208, 529 P.2d 835 (1974).

Affirmed.

WILLIAMS, C.J., and SWANSON, J., concur.

Petition for rehearing denied July 23, 1975.

Review denied by Supreme Court September 23, 1975.