[No. 5693–3–II.   Division Two.   August 22, 1983.]

THE STATE OF WASHINGTON, *Appellant,* v. ROBERT
H. WOLL, *Respondent.*

---

*Michael G. Spencer, Prosecuting Attorney,* for appellant.

*Michael R. Hutton,* for respondent.

PETRIE, J.—Plaintiff, the State of Washington, appeals an order dismissing "all charges against and prosecution" of defendant, Robert H. Woll, "in the interest of justice pursuant to CrR 8.3(b)" following Woll's conviction by jury verdict of the crime of first degree theft. The State also appeals the trial court's alternative portion of that order granting defendant's motion for a new trial, which was based primarily on the trial court's previous refusal to present to the jury defendant's proposed instructions on

the issue of "intent." We reverse both the trial court's order of dismissal under CrR 8.3(b) and the trial court's alternative order granting a new trial.

The State's appeal raises three questions: (1) whether the trial court had authority under CrR 8.3(b)[1] to dismiss the instant case after the jury had entered a guilty verdict; (2) whether dismissal under CrR 8.3(b) "in the furtherance of justice" was improper absent governmental misconduct or arbitrary action; and (3) whether an information that charges theft under RCW 9A.56.020(1)(c)[2] requires proof of an intent by the accused to deprive the owner permanently of the property.

On February 1, 1979 defendant Woll deposited $448 in his checking account at the Aberdeen Branch of the Seattle–First National Bank (Sea–First). The bank mistakenly credited Woll's account with $4,448. The defendant discovered this error when he received his next bank statement several days later. Woll testified that he contacted a person, whose name and title he did not obtain, at Sea–First about the mistake and was told to "keep it in limbo until the error has been found." For the next 3 months, Sea–First continued erroneously to credit Woll's account. Then, on April 18, 1979, Woll closed the Sea–First account by cashing a check in the amount of $4,223.93 and depositing the proceeds in an interest–bearing account in another bank. Although Woll denied that he had any "intention to deprive Sea–First of the money" and denied that he had any "intent to permanently take the money," he subsequently spent it all within 2 months.

---

[1]CrR 8.3(b) provides:

"The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order."

[2]RCW 9A.56.020(1) provides in part:

"(1) 'Theft' means:

". . .

"(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services."

The Federal Reserve Board detected the bank's mistake on February 21, 1980 and notified Sea–First of its error. The bank then demanded reimbursement from Woll. Because Woll did not timely repay Sea–First, the bank reported the matter to the prosecuting attorney who then initiated these criminal proceedings. On June 11, 1980, Woll was charged with having committed first degree theft "on or about April 18, 1979," by appropriating lost or mis-delivered property under RCW 9A.56.020(1)(c). Three days before trial, Woll repaid the bank from the proceeds of a second mortgage he placed on his house.

Following trial and conviction, Woll moved to arrest judgment and/or for a new trial based on the grounds that the trial court erroneously refused to submit to the jury his proposed "to convict" and "intent" instructions.[3] Woll contends that one of the elements the State had to prove beyond a reasonable doubt was that he intended to deprive the bank permanently of its money. The trial court instructed the jury that theft by the appropriation of mis-delivered property merely required proof, in the statutory language, of the "intent to deprive."[4]

After considering defendant's alternative motions, the court, on its own motion, dismissed this charge and convic-

---

[3]Defendant's proposed instruction regarding the elements necessary to convict recited in relevant part:

"That the defendant intended to permanently deprive the rightful owner of the property."

Defendant's proposed instruction regarding the necessary intent to commit the crime recited:

"The intent required to establish theft is an intent to permanently deprive the rightful owner of the property. Taking property with an intent to return it does not meet such requirement."

[4]Instruction 5 recited in relevant part:

"That on or about the 18th day of April, 1979, the defendant appropriated lost or misdelivered property of another . . . [t]hat the defendant intended to deprive the other person of property . . ."

Instruction 7 recited:

"Theft means to appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive that person of such property or services."

tion in the "furtherance of justice" under CrR 8.3(b), declaring that the State had improperly decided to prosecute Woll and that the bank had improperly used the criminal justice system to collect a debt. In addition, the court, alternatively, granted defendant's motion for a new trial. The court reasoned that its refusal to present defendant's proposed instruction might have prevented the jury from finding that defendant had intended merely to borrow the bank's money.

We consider first whether the trial court properly dismissed the case under CrR 8.3(b). For purposes of this appeal only, we accept Woll's contention that the trial court had authority to act under CrR 8.3(b) even after return of the guilty verdict, but we cannot accept his contention that CrR 8.3(b) confers upon a trial court such broad discretion that an appellate court should defer to that discretion under the facts of this case.

CrR 8.3(b) does allow a court to dismiss any criminal prosecution "in the furtherance of justice." However, "the furtherance of justice" under CrR 8.3(b) has been narrowly construed to require "governmental misconduct" or "arbitrary action." *State v. Whitney,* 96 Wn.2d 578, 580, 637 P.2d 956 (1981); *State v. Starrish,* 86 Wn.2d 200, 544 P.2d 1 (1975).

The record in the instant case is totally devoid of any evidence of governmental misconduct or arbitrary action. Although the trial court (and we might also have) disagreed with the prosecutor's decision to file the charges, the prosecutor's decision is clearly not conduct falling within the purview of CrR 8.3(b). Neither can we hold that the prosecutor's decision to file the charge constituted "arbitrary action." The order of dismissal is therefore reversed.

We turn, then, to the central issue of whether theft by the appropriation of lost or misdelivered property requires proof of the intent to deprive the owner permanently of the property.

The wrongful appropriation of property mistakenly delivered appears to have been considered larceny at com-

mon law only if, upon receipt, the recipient knew that it was mistakenly delivered and at that time formed the intent to keep it.[5] However, *State v. Olds,* 39 Wn.2d 258, 235 P.2d 165 (1951) and *State v. Heyes,* 44 Wn.2d 579, 269 P.2d 577 (1954), construing Rem. Rev. Stat. § 2601(4) (the statutory forerunner of RCW 9A.56.020(1)(c)), distinguished this statutory offense from common law larceny.[6] In *State v. Olds, supra,* the court expressly held that, in order to sustain a conviction under Rem. Rev. Stat. § 2601(4), no evidence of *original* felonious intent was necessary. One noted authority interpreted *State v. Olds, supra,* as holding that Washington's statutory offense of wrongfully appropriating misdelivered property is distinguishable from common law larceny:

> The wrongful withholding of property delivered by mistake, with knowledge of the mistake acquired *subsequent to the receipt,* may be punishable by statute under the name of larceny, but it is an offense distinct from common law larceny.

(Italics ours.) R. Perkins, *Criminal Law* 254 n.76 (2d ed. 1969).

Thus, the common law of larceny required proof that the defendant's intent to steal concurred with his mistaken *receipt* of the property,[7] whereas, under RCW 9A.56-

---

[5]*Crimes (Clark & Marshall)* § 12.06, at 848–49 (M. Barnes 7th ed. 1967); W. LaFave & A. Scott, *Criminal Law* § 85, at 629 (1972); R. Perkins, *Criminal Law* 254–56 (2d ed. 1969).

[6]Rem. Rev. Stat. § 2601 provided in relevant part:
"Every person who, with the intent to deprive or defraud the owner thereof—
". . .
"(4) *Having received any property by reason of a mistake,* shall with knowledge of such mistake secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto . . .
". . .
". . . shall be guilty of larceny." (Italics ours.)

[7]"*Delivery of Possession by Mistake.* . . . Whether a conversion by the person to whom it is delivered constitutes larceny depends upon his intent when he obtains possession. If property intended for one person is delivered to another by mistake, he acquires the possession, and only the possession. *If he acquires pos-*

.020(1)(c) the "intent to deprive" must exist at the time of the appropriation. In the case at bench, Woll was charged with having committed the crime on or about April 18, 1979. Thus, under the charge and under the trial court's instruction, the prosecution had to prove defendant's intent on the date he transferred the funds—not the date or dates on which he subsequently spent the money. Under Washington law, "[t]he gravamen of the offense is the appropriation of the property *after having received it*". (Italics ours.) *State v. Heyes,* 44 Wn.2d at 588.

We are persuaded that in order to prove a charge of theft under the statutory offense of appropriation of misdelivered property, the quality of the intent required is the same as that required under the statutory offense of embezzlement. Embezzlement, also, was not larceny at common law. Washington courts have, accordingly, declined to read into the crime of embezzlement the common law requisite for larceny (the intent to deprive permanently). Embezzlement requires proof only of the intent to deprive, and the crime is completed when the accused fraudulently misappropriates the property. *State v. Garman,* 76 Wn.2d 637, 647–48, 458 P.2d 292 (1969); *State v. Burnham,* 19 Wn. App. 442, 445 n.3, 576 P.2d 917, *review denied,* 90 Wn.2d 1020 (1978); *State v. Dorman,* 30 Wn. App. 351, 355–56, 633 P.2d 1340, *review denied,* 96 Wn.2d 1019 (1981).

Therefore, we reject the defendant's contention that theft by the appropriation of misdelivered property incorporates the intent to commit common law larceny. We hold that this crime requires proof of the intent merely to deprive, at any time, the property appropriated and not necessarily coincidental with the wrongful receipt, precisely

---

*session innocently, his subsequent conversion of the property,* animo furandi, [with felonious intent] on discovery of the mistake, *is not larceny, but he is guilty of larceny if he knows of the mistake when he receives the property, and takes it then animo furandi.* The same is true when a person, in paying or lending money to another, gives him by mistake more money than is intended." (Footnotes omitted. Italics ours.) *Crimes (Clark & Marshall)* § 12.06, at 848–49 (M. Barnes 7th ed. 1967).

as the jury was instructed.

Therefore, we reverse the trial court's order granting a new trial as well as the order dismissing the information. The jury's verdict is reinstated, and the cause is remanded for imposition of sentence.

PETRICH, C.J., and WORSWICK, J., concur.