[No. 38887.    Department Two.    May 25, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. RONNIE CHARLES
DOUGLAS, *Appellant*.*

*Wm. J. Gaffney,* for appellant.

*Charles O. Carroll* and *Bruce W. Rudeen,* for respondent.

*Reported in 428 P.2d 535.

HILL, J.—Ronnie Charles Douglas was charged with grand larceny in that on or about the 19th day of January, 1966, he received, concealed, or withheld or aided in concealing and withholding personal property of Edwin O'Brien, with the intent to deprive or defraud the owner thereof, which property had been wrongfully appropriated from its owner; and the defendant knew that it had been so appropriated; and that such property was of a value in excess of $75.

The jury was instructed that if the charge was established in all respects, except as to value, the defendant could be found guilty of the lesser included offense of petit larceny; and that is what the jury did.

On that verdict, the trial court imposed judgment of conviction and sentence, from which the defendant has appealed.

The essential facts are that some time between January 2 and 9, 1966, the home of Mr. and Mrs. Edwin O'Brien in North Bend was burglarized. The O'Briens occupied this home only on weekends, and first discovered that their home had been looted on the latter date.

County Detective Eugene Steinauer was assigned to this burglary case on January 17. When the articles which had been taken were described to him, he was immediately impressed with the similarity to articles which he had seen 4 days earlier (January 13) in the apartment of the defendant.

Steinauer proceeded, under the advice of the prosecuting attorney's office, to secure a warrant authorizing him to search the defendant's apartment.

The O'Briens were present when the apartment was searched January 19, and they identified the articles taken from their home, as they also did at the trial.

The defendant's explanation was that, while in charge of a service station in North Bend, on a date two or three days prior to January 13, an Indian, accompanied by his wife and two or three children, drove up and wanted some gas but had no money. The defendant further testified that the Indian referred to some articles which were in his car (the

articles here in question) and asked the defendant to make an offer. Needing such articles to furnish his apartment, he offered $40 and a tank of gas for them, and the Indian accepted and put the articles in the defendant's car. No one else was present at the time this transaction occurred (about 2 a.m.).

Only two issues are raised on this appeal. We will first consider whether the trial court erred in failing to give an instruction which both the state and the defendant had requested, *i.e.*:

> In order to convict the defendant on the basis of circumstantial evidence, the facts and circumstances relied upon should be consistent with each other, and with the guilt of the defendant. They should be inconsistent with any reasonable theory of innocence. They should be of such character as to exclude every reasonable hypothesis other than that of guilt. Circumstantial evidence meeting these requirements is entitled to the same weight as direct evidence. Strong circumstantial evidence often is the most satisfactory method from which to draw the conclusion of guilt or innocence. (Defendant's requested instruction No. 1.)

Instead, the court gave the following circumstantial-evidence instruction:

> A fact may be proven by proof of circumstances from which such fact may be reasonably inferred. To base a verdict on circumstantial evidence it must be such as to convince you of guilt beyond a reasonable doubt. (Instruction No. 5.)

The latter instruction, the defendant claims, is not adequate where there are multiple hypotheses from the circumstantial evidence from which differing conclusions as to guilt or innocence may be reached.

The evidence against the defendant is entirely circumstantial. We long ago said that bare possession of recently stolen property alone is not sufficient to justify a conviction (*State v. Humason*, 5 Wash. 499, 32 Pac. 111 (1893)), and, as indicated in *State v. Portee*, 25 Wn.2d 246,

170 P.2d 326 (1946), that statement has been many times repeated.[1]

Without something more than the discovery of the articles from the O'Brien home in the defendant's apartment, the state could not convict the defendant of either burglary or larceny. But, as quoted in *Portee, supra* at 253, Wharton says:

"Mere possession of stolen goods, unaccompanied by other evidence of guilt, is not to be regarded as prima facie evidence of burglary. *But the rule is otherwise when there is indicatory evidence on collateral points.*" (Italics supplied in *Portee.*)

and Nichols is quoted:

"SUFFICIENCY IN CONNECTION WITH OTHER EVIDENCE. Possession of recently stolen property, in connection with other evidence tending to show guilt, is sufficient to warrant a conviction. When a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction. When the fact of possession of recently stolen property is supplemented by the giving of a false or improbable explanation of it, or a failure to explain when a larceny is charged, or the possession of a forged bill of sale, *or the giving of a fictitious name,* a case is made for the jury." (Italics supplied by *Portee.*)

The Washington cases, as discussed in *Portee, supra,* support these text statements. Two of the additional circumstances listed in *Portee* were:

(3) an explanation of a kind that could not be checked or rebutted, and (4) one that a jury could regard as improbable.

As indicated, the defendant explained his possession of the articles taken from the recently burglarized O'Brien home by saying that he had purchased them from an Indian for $40 and a tank of gas, and that no one was present

---

[1]Subsequent to *State v. Portee, supra,* see: *State v. Willis,* 40 Wn.2d 909, 913, 246 P.2d 827 (1952); *State v. Mevis,* 53 Wn.2d 377, 380, 333 P.2d 1095 (1959); *State v. Razey,* 54 Wn.2d 422, 427, 341 P.2d 149 (1959).

at the time except himself, the Indian, and the Indian's family. The defendant had never seen the Indians before nor has he seen them since; he did not take the license number of the car, or any receipt for his money, or any paper evidencing the sale of the articles to him.

This, in the language of *Portee,* is an explanation of a kind that cannot be checked or rebutted, and one that a jury could regard as improbable.

■ There were at least three hypotheses that a jury might accept: one, that the defendant was lying and there had been no transaction with an Indian; two, that the defendant did buy articles from the Indian, but that, under the circumstances, he must have known that they were stolen; and three, that he did buy the articles from the Indian and that he did it in good faith, believing that they belonged to the Indian. Either of the first two would lead to a verdict of guilty; the third to a verdict of not guilty.

Judge Steinert, in *State v. Gillingham,* 33 Wn.2d 847, 854, 207 P.2d 737 (1949), says it is a well-established rule

> [T]hat, in order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish, or tend to establish, his innocence.[2]

It is on this statement that the defendant's proposed instruction was based, and such an instruction should be given where circumstantial evidence is relied on to sustain

[2]Other cases between *Gillingham* and *State v. Slaughter,* 70 Wn.2d 935, 425 P.2d 876 (1967), laying down this test for the sufficiency of the evidence to sustain a conviction on circumstantial evidence, are: *State v. Willis,* 37 Wn.2d 274, 223 P.2d 453 (1950) (jury so instructed); *State v. Long,* 44 Wn.2d 255, 266 P.2d 797 (1954) (jury so instructed); *State v. McMurray,* 47 Wn.2d 128, 286 P.2d 684 (1955); *State v. Taylor,* 47 Wn.2d 213, 287 P.2d 298 (1955); *State v. Charley,* 48 Wn.2d 126, 291 P.2d 673 (1955); *State v. Berg,* 49 Wn.2d 86, 298 P.2d 519 (1956); *State v. Sewell,* 49 Wn.2d 244, 299 P.2d 570 (1956); *State v. Siemion,* 54 Wn.2d 17, 337 P.2d 715 (1959); *State v. Lewis,* 55 Wn.2d 665, 349 P.2d 438 (1960) (jury so instructed); *State v. Walters,* 56 Wn.2d 79, 351 P.2d 147 (1960); *State v. James,* 58 Wn.2d 383, 363 P.2d 116 (1961) (tried to court; same test applied); *State v. Courville,* 63 Wn.2d 498, 387 P.2d 938 (1963); *State v. Myers,* 65 Wn.2d 911, 400 P.2d 372 (1965).

the conviction and there are multiple hypotheses from the circumstantial evidence, one of which would establish or tend to establish the innocence of the defendant.

We have re-affirmed the rule in a very recent opinion, *State v. Slaughter*, 70 Wn.2d 935, 425 P.2d 876 (1967), in which we stated that, where a conviction was based on circumstantial evidence,

> [S]uch evidence not only must concur to show defendant guilty, and be consistent with a hypothesis of guilt, but also must be inconsistent with any other rational conclusion and exclude every other reasonable theory or hypothesis except that of guilt. It is the jury, under proper instructions, which makes the determination whether the circumstantial evidence excludes every reasonable hypothesis consistent with innocence.

Nor is *State v. Studebaker*, 67 Wn.2d 980, 410 P.2d 913 (1966), an authority supporting the refusal to give the instruction. (In a colloquy between the trial court and counsel, the *Studebaker* case was apparently the one to which reference was made as a basis for refusing to give the requested instruction.) We said in that case:

> The defendant contends the trial court erred in failing to give his proposed instruction to the effect that where there are two hypotheses that can reasonably be drawn from the evidence, one leading to innocence and the other leading to guilt, the former hypothesis must be followed.
>
> *This type of instruction is properly given in cases where there is circumstantial evidence and inconsistent inferences of the defendant's guilt or innocence may reasonably be drawn therefrom. Such a case is not before us.* (Italics ours.) (p. 986)

*Studebaker, supra,* was not, as the court indicated in the foregoing quotation, a circumstantial-evidence case, *i.e.,* if the jury believed the prosecuting witness, the defendant was guilty. But there is now before us a case in which there is circumstantial evidence and inconsistent inferences of guilt or innocence to be drawn therefrom. The trial court erred in refusing to give the requested circumstantial-evidence instruction.

The other question raised on this appeal is: Did the trial court err in refusing to suppress the evidence seized under the search warrant in this case?

Detective Steinauer signed an affidavit for a search warrant in the presence of the court commissioner of the Sno Valley District Justice Court, Barbara J. Michaud, after discussing the circumstances with her. The affidavit on its face is sufficient and proper. It begins:

> Eugene G. Steinauer (KCSO) being first duly sworn on oath deposes and says: That the following goods and chattels, to-wit: [then follows a description of the articles stolen from the O'Brien home] . . . were on or about the 9th day of January, 1966, by some person or persons unknown, stolen, taken and carried away out of the possession of the said Ed O'Brien in the county aforesaid . . . .

Steinauer then described the premises where he believed the articles to be (in the apartment of the defendant), and gave the facts and circumstances which supported his belief that they were stolen. He signed the affidavit, and then followed the customary jurat, "Subscribed and sworn to before me this 19th day of January, 1966," and the signature of Barbara J. Michaud as "Court Commissioner Sno Valley District Justice."

On the basis of this affidavit and a conversation between Detective Steinauer and Court Commissioner Barbara Michaud, a search warrant was issued, signed by "Barbara J. Michaud, Court Commissioner." The search was made, the stolen goods recovered.

On the face of the documents, everything is perfect. The defect claimed is that the court commissioner did not administer an oath to the detective and that, while the affidavit was subscribed by the detective in her presence, it was not "sworn to." The court commissioner testified frankly to the absence of any formal oath.

The argument of the defendant is that there being no oath, the search warrant was not valid, and the articles obtained under it were not admissible in evidence.

RCW 10.79.010 requires the application for a search warrant be under oath and that the magistrate find reasonable

cause for the applicant's belief. The fourth amendment to the United States Constitution provides that no search warrants shall issue but upon probable cause, supported by oath or affirmation.

█ We do not commend the failure to comply literally with the statute and the constitution by the officer and the court commissioner, and see no adequate excuse for it—however, the authorities support the proposition that what occurred here amounted to the taking of the necessary oath by Detective Steinauer.

We have no doubt that he could be held responsible if the statements in the affidavit he signed had been false and the search warrant wrongfully issued. See *State v. Dodd*, 193 Wash. 26, 74 P. 2d 497 (1937).

The leading case seems to be *Atwood v. State*, 146 Miss. 662, 111 So. 865, 51 A.L.R. 836 (1927). The court there said:

> The affiant went to the justice of the peace for the avowed purpose of obtaining a search warrant, and the justice of the peace knew that he came for that purpose. Both of them knew that an oath was necessary to be administered before the warrant could be issued, and with that knowledge each of them did what he considered proper for the administration of the oath. The affiant, in the presence of the justice of the peace, signed the affidavit; the justice of the peace thereupon affixed his jurat thereto, and issued the search warrant in proper form. Although not a word was said by either in reference to an oath, they both knew an oath was necessary, and both intended that the necessary thing should be done in order to obtain the search warrant. We think, by construction, what occurred amounted to the taking of the necessary oath by the affiant. One may speak as plainly and effectually by his acts and conduct as he can by word of mouth. It follows from these views that the trial court committed no error in admitting the evidence obtained by the search warrant. (51 A.L.R. 839)

The cases appearing in the A.L.R. annotation (51 A.L.R. 840) give ample support to the holding of the *Atwood* case, *supra*. Cases subsequent to the annotation do likewise.[3]

---

[3]*In re Rice*, 35 Ill. App. 2d 79, 181 N.E.2d 742 (1962); *Lindley v. State*, 294 P.2d 851 (Okla. Crim. 1956); *Cole v. State*, 92 Okla. Crim.

The opinion in *Cole v. State,* an Oklahoma case cited in footnote 3 contains a quotation from *Farrow v. State,* 71 Okla. Crim. 397, 112 P.2d 186 (1941), which fits the present situation exactly.

"Where a deputy sheriff testifies on a motion to suppress the evidence that he was not formally sworn to the affidavit by raising his hand and invoking the deity, but that he had read the affidavit and signed the same, and handed it to the magistrate to procure a search warrant, and the magistrate places his jurat upon the affidavit and issues a search warrant based thereon, such affidavit is not subject to the objection that the deputy sheriff was not formally sworn to said instrument." (p. 319)

The case of *State v. Heyes,* 44 Wn.2d 579, 269 P.2d 577 (1954), which is the sole reliance of the defendant, is not in point. There, the state attempted to prove that an oath had been administered and failed to do so. Here, the state contends that what was done was the equivalent of an oath. The authorities, as we have indicated, support that proposition.

We find no merit in the defendant's claim that the evidence secured by the search warrant should be suppressed. We grant a new trial for the reason that the trial court's instruction on circumstantial evidence was not adequate in view of the multiple hypotheses which the jury might accept.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

---

316, 223 P.2d 155 (1950); *Loudermilk v. State,* 83 Okla. Crim. 374, 177 P.2d 129 (1947); *Vaughn v. State,* 146 Tex. Crim. 586, 177 S.W.2d 59 (1944).