[No. 39747. Department Two. June 27, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. LEO SCHRAGER, *Appellant.*[*]

*James A. Alfieri* and *Richard G. Martinez,* for appellant.

*Arthur E. Sherman, Jr.,* for respondent.

HUNTER, J.—This is an appeal from a conviction and sentence upon three counts of petit larceny.

[*]Reported in 442 P.2d 1004.

The defendant (appellant) was charged on information with three counts of grand larceny, alleging that he had taken the coin boxes from pay telephones at two bars and a hotel in Raymond, Washington, on January 31, 1967. At the trial eyewitnesses testified that the defendant and an unidentified companion visited each of these establishments on the afternoon of the day in question, and used the pay telephones at each location.

In view of the issues raised on this appeal we deem it necessary to relate the testimony of various witnesses in some detail.

Mrs. Lavelle Jackson, operator of the Willapa Hotel, testified that the defendant came into the lobby about 2 p.m., in the company of another man and that the defendant then entered both phone booths in the lobby. He stayed in one booth a considerable length of time. During that time she heard no coins drop and no conversation.

Constance Peterson, a bartender at the Willapa Hotel, testified that two men, one of whom was the defendant, entered the hotel bar between 2:30 and 3 p.m. on January 31, 1967, and ordered drinks. She said that prior to that time she had seen the defendant in a phone booth located in the hotel lobby.

Helen Clearwater, a waitress at the Willapa Hotel, also testified that she had seen two men, one of whom was the defendant, come into the hotel restaurant between 2:30 and 2:45 p.m. on January 31, 1967.

Eugenia Di Ricco, the operator of the Raymond Tavern, testified that two men, one of whom was the defendant, entered her tavern at about 3:30 p.m. on January 31, 1967. They used the phone, both standing around it so as to conceal it from her view, for a considerable time; long enough to play five records on the jukebox. She testified that when the men left they drove off in a blue or blue-green automobile.

Mrs. Elvira Booth, the operator of Spike's Tavern, testified that two men, one of whom was the defendant, entered her tavern at about 4 p.m. on January 31, 1967, and went

directly to the phone, where they stayed for 15 minutes. She said she didn't hear any coins drop and that one of the men talked continuously on the phone. She stated that she became suspicious of the two men and tried to see what they were doing, but that their position relative to the phone blocked her view. When they left the phone they went out the door and she decided to call the police. Before she did so she went to the window and saw the two men drive off in a light blue Buick with Oregon plates. Her testimony was corroborated by a customer, Al Leach, who was in the tavern at the time.

Carl Allison, a machinist and mechanic, testified that he was working on a dock on the south fork of the Willapa River on January 31, 1967, and that between 3:30 and 4 p.m. a blue Buick or Pontiac with Oregon plates drove onto the dock and stopped. A man, not the defendant, got out of the car and threw a paper sack, which he had under his coat, into the river. Allison testified that there was another man in the car whom he could not see well enough to identify. After the car left Allison fished the paper sack out of the river and found in it exhibit 2, a telephone coin box, which was subsequently identified as coming from the pay phone at the Raymond Tavern.

Louis Linich, a Grays Harbor County Deputy Sheriff, testified that he stopped a blue-green 1966 Buick sedan, bearing Oregon license plate number MBT 771, for a traffic offense south of Montesano, about 4:30 p.m. on January 31, 1967. He stated that the defendant was driving the car at that time.

Sergeant Donald J. Kelsey, of the Seattle Police Department, testified that he executed a warrant for the defendant's arrest at 8 a.m. on February 3, 1967, in the company of two other officers. They located the defendant at an apartment on Mercer Island. Coincident with the arrest they searched the apartment and the defendant's car, which was parked outside. They also searched a basement storage locker assigned to the apartment. Sergeant Kelsey stated that the defendant told him that he was the owner of the

storage locker. In the locker the officers found a bag in which were several items introduced in evidence at the trial. These included paper coin wrappers, lengths of high quality flat steel, a coin stacking device, a pair of pliers, an electric saw, vises, an electric grinder, metal files, several keys, and other items.

Marshall Briggs, a senior repairman for the telephone company, testified that when Carl Allison delivered a telephone coin box to him on January 31, 1967, at about 3 p.m., he called the Seattle office and learned that the box came from the pay telephone at the Raymond Tavern. He stated that he then went to the tavern and found the coin box missing from the pay phone located there. He testified that he went to Spike's Tavern, where he found that the coin box was also missing from the pay phone. At about 5:30 p.m., he checked the phones at the Willapa Hotel, and discovered that one of the coin boxes was missing.

Frank M. Jones, a telephone company security officer, testified that, based on the telephone company collection schedule records, he computed that on January 31, 1967, the missing coin box of the pay phone at the Willapa Hotel contained approximately $55.50; the coin box of the pay phone at the Raymond Tavern contained $63.75; and that the coin box of the pay phone at Spike's Tavern contained $56.25. He also testified that the materials found in the defendant's Seattle apartment could be used for the manufacture of implements which would open the lower housing of pay telephones, and that the keys found at the Seattle apartment did in fact open the upper housings of the pay telephones involved in this case.

The defendant declined to testify. The court instructed the jury that it could find the defendant guilty only of petit larceny, in view of the evidence. The jury returned a verdict of guilty on all three counts, and judgment and sentence was entered on the verdict. The defendant appeals.

The defendant contends, first, that the trial court erred in admitting over objection the following testimony of Helen Clearwater:

A. . . . there was talk just going around in the hotel that these men had done this and various things leading up to it.

■ It is argued that this statement incorporated hearsay evidence, because the witness was testifying to the purport of statements made by out-of-court declarations. The state argues that the testimony was admissible because it was not introduced in order to prove the truth of the matters alleged. The effect of the testimony was nevertheless to assert the truth of the matter alleged in the hearsay statements. Such testimony is inadmissible. See *Moen v. Chestnut*, 9 Wn.2d 93, 113 P.2d 1030 (1941). However, in view of this record admission of the statement does not constitute reversible error. Considering all of the evidence in this case, we cannot reasonably believe that the absence of this statement would have affected the jury verdict and accordingly we find that the defendant's substantial rights were not prejudiced. *State v. Mesaros*, 62 Wn.2d 579, 384 P.2d 372 (1963) and cases cited; *State v. Wells*, 72 Wn.2d 492, 433 P.2d 869 (1967) (concurring opinion).

The defendant's second contention is that the trial court erred in overruling his objection to the following testimony of Elvira Booth:

A. . . . he was more or less at an angle to hide it. I couldn't see the phone.

The defendant argues that this statement is inadmissible since it represents the witness' opinion of what the defendant intended by his act, and was highly prejudicial and inflammatory. We find no merit in this contention, because we think the reasonable interpretation of the witness' statement is that she was merely describing the physical relationship between the defendant and the pay telephone. Such testimony is competent evidence.

■ The defendant next contends that it was error for the trial court to admit over objection testimony concerning the unidentified man who accompanied the defendant on the day of the alleged crimes. He argues that this tended to confuse the jury about the defendant's identity. We dis-

agree. Several witnesses made positive identifications of the defendant in court, so there was no real doubt as to his identity. Moreover, the relevancy of testimony concerning the "other man" was a matter within the discretion of the trial court, *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959), and in this case, it is obvious that such testimony helped to explain the circumstances under which the alleged criminal acts took place. We find no abuse of discretion by the trial court in admitting the testimony.

The defendant contends that the items in the sack seized at the Mercer Island apartment were introduced in evidence without a proper foundation having been laid. He argues, specifically, that the witness (Sergeant Kelsey) did not make a positive identification of these items. The defendant bases this assignment of error on the following recital in the record:

Q. [By prosecutor] Would you look at the contents of this bag? Is there anything now in the bag that was not in the bag at the time? A. [Sergeant Kelsey] Yes, sir.

Shortly after this, defense counsel asked that the jury be retired and that the trial court declare a mistrial. The following colloquy then occurred:

Q. [By defense counsel] Is there something in the bag that was not there at the time? A. [Sergeant Kelsey] I do not believe so. Not from the general appearance of the objects. Court: Do you think you said that? A. That is not the way I understood the question. . . . Court: Do you mean there was something in the bag that was not there before in your answer? A. No, sir. That is not the way I understood the question.

It is apparent from the record that the witness misunderstood the question and that he did not intend to say that the contents of the bag offered in evidence differed from the contents of the bag when it was seized. Moreover, after the jury was called in the witness proceeded to properly identify the items in the bag. If there was any misunderstanding on the part of the jury, it was thereby corrected. The defendant may not complain of prejudice under these circumstances.

Error is next assigned to admitting the testimony of Frank Jones to the effect that the value of the pay phone coin boxes was $11 each. The defendant argues that Jones was not properly qualified to give an opinion on this subject. However, the record shows that Jones' testimony on this issue was stricken and that the jury was instructed to disregard it. There is therefore no basis for assigning error to the testimony.

■ The defendant contends that his motion to direct a verdict of acquittal should have been granted because the state's case was based entirely upon circumstantial evidence. The established rule in this state is that circumstantial evidence alone will support a criminal conviction. *State v. Mevis*, 53 Wn.2d 377, 333 P.2d 1095 (1959), and cases cited. See 2 Wharton, Criminal Evidence § 6 (12th ed. 1955, Anderson ed.). This contention is without merit.

■ The defendant contends that it was error for the trial court to permit him to be convicted of petit larceny when he was originally charged with grand larceny, in view of Const. art. 1, § 22, which requires that convictions be had only on the crime charged. See *State v. Thompson*, 68 Wn.2d 536, 413 P.2d 951 (1966). However, petit larceny is a lesser included offense in the crime of grand larceny, and the elements, save the amount, are the same in each case. Accordingly, when the defendant was found guilty of petit larceny there was no variance from the crime charged. Moreover, CrR 101.04W (b) provides in part:

An information shall be considered amended to conform to the evidence introduced without objection in support of the crime substantially charged therein, unless the defendant is prejudiced in a substantial right.

The defendant in this case was not prejudiced by the information being considered to be amended to reflect a charge of petit larceny. Accordingly, we view the information as so amended.

Finally, the defendant contends that the cumulative effect of the errors assigned deprived him of a fair trial, relying on *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963).

We disagree. While the testimony of the witness Clearwater was admitted erroneously, we are convinced, as heretofore stated, that this single error in no way prejudiced the defendant's substantial rights. In *State v. Miles,* 73 Wn.2d 67, 70, 436 P.2d 198 (1968), we said that "the final measure of error in a criminal case is not whether a defendant was afforded a perfect trial, but whether he was afforded a fair trial." The defendant had a fair trial and his conviction will stand.

The judgment and sentence is affirmed.

FINLEY, C. J., HILL, HAMILTON, and NEILL, JJ., concur.

September 11, 1968. Petition for rehearing denied.