[No. 34-40796-3.   Division Three.   December 15, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN MINES, *Appellant.*

Gose & Gose and *Phelps R. Gose,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Albert J. Golden, Deputy,* for respondent.

MUNSON, J.—Defendant appeals from his conviction as an aider and abettor to the crime of robbery.

In the early morning hours of July 14, 1968, the defendant, John Mines, in the company of Steve Watkins and Frank Summerlin, forced an entrance into the apartment of John Frazee. In the apartment at the time were John Frazee, Joel Hansen, Todd Corriell and Brian Kimbrough. Steve Watkins openly exhibited a large hunting knife. The defendant made threatening comments to the occupants of the apartment regarding the use of the knife, *i.e.* "How would you like to get cut up right now?" The defendant and Hansen then went into an adjoining room. While they were gone Watkins, in the presence of Summerlin, proceeded at knife-point to take Corriell's and Frazee's money, and a credit card from the latter. Thereafter, Watkins went into the room where Mines and Hansen were talking, showed Mines what he had taken, asked Hansen for his money, and then returned to the front room. As Mines,

Watkins and Summerlin were leaving the apartment they advised the occupants not to notify the police or suffer the consequences, *i.e.* killing them or leveling the whole block. Mines and Watkins were arrested several days later in an adjoining community, at which time two knives were found in Watkins' car.

The defense called Steve Watkins as a part of their case. He denied robbing the occupants of the apartment and having a knife in his possession during the July 14th visit. On cross-examination he did admit having two knives in his automobile at the time of his arrest. He claimed one belonged to a David White and the other to the father of John Mines. The deputy prosecutor then had the clerk mark two knives for identification. The following is taken from the statement of facts:

Q   Do you recognize this?

A   Yes, sir.

Q   What is that?

A   That's Mr. White's hunting knife.

Q   That's Mr. White's?

A   Yes, sir.

Q   Do you recognize this?

A   Yes, sir. That's Mr. Mines' father's.

MR. GOSE: I object to the introduction of these knives. They weren't placed at the scene certainly. Nobody testified as to the knife. I don't think they are material. And I think it's highly prejudicial. In fact, I move for a mistrial at this time with the prosecutor introducing these knives.

THE COURT: Do you want to argue the motion?

MR. GOSE: Yes.

THE COURT: The jury will retire please.

During the subsequent argument, out of the presence of the jury, the deputy prosecuting attorney stated he would seek to introduce these knives for impeachment purposes. At the conclusion of the argument, in which both counsel participated, the court stated:

THE COURT: Well, I don't know that I'm going to admit the knives. But I don't see what prejudice there is. Now

that he's admitted that these are the knives that were in his car three days later, I don't think I'm going to admit this if you are offering them.

The only issue before this court is the defendant's contention that the mere presence of these knives, during the quoted testimony, was inherently prejudicial.

■ Our Supreme Court had held the final measure of error in a criminal case is not whether a defendant was afforded a perfect trial, but whether he was afforded a fair trial. *State v. Schrager*, 74 Wn.2d 75, 81, 442 P.2d 1004 (1968). One of the criteria of a fair trial is whether irrelevant and inflammatory matter has been introduced which would have a natural tendency to prejudice the jury against the accused. If so, it is not a fair trial. *State v. Green*, 71 Wn.2d 372, 428 P.2d 540 (1967); *State v. Miles*, 73 Wn.2d 67, 436 P.2d 198 (1968).

The authentication of the identified knives was barely under way when the defendant interposed an objection and a motion for mistrial. Thereupon, the jury was excused. After the court indicated it would probably not admit these identifications, the prosecution made no further mention of the proposed identifications, nor did they seek to further qualify them as exhibits. There is considerable testimony regarding the presence of knives during the commission of this crime.

The proposed identifications could have two bases of relevance, *i.e.* similarity to the weapon used in the commission of the crime, and/or impeachment. We will not speculate what might have transpired had not the defendant interposed his objection when he did. As stated in *Harrington v. California*, 395 U.S. 250, 254, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969):

We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact * * * on the minds of an average jury.

From the facts of this case, the deputy prosecutor's con-

duct was not of such an inflammatory nature as to be presumed inherently prejudicial to the defendant's right of a fair trial.

Judgment is affirmed.

EVANS, C. J., and GREEN, J., concur.