[No. 177-3.   Division Three.   February 19, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL R. BECK, *Appellant.*

*Riner E. Deglow,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Garald A. Gesinger, Deputy,* for respondent.

GREEN, J.—Defendants, Michael R. Beck and William F. Lukenbill, were charged by information with the crime of grand larceny. In essence both defendants were charged with receiving, concealing, and aiding in the concealment of certain copper and brass wire of a value in excess of $75 on or about November 26, 1968, knowing it to have been stolen. Both defendants were convicted. Only defendant Beck appeals.

■ First, Beck contends the trial court erred in refusing to grant a motion to dismiss at the close of the prosecution's case. When Beck elected to proceed and present evidence in his own defense, he waived this assignment of error. *State v. Hendrickson,* 1 Wn. App. 61, 459 P.2d 55 (1969).

■ Second, Beck contends the trial court erred in denying his challenge at the close of all the evidence and in refusing to direct a verdict for him. In *State v. Etheridge,* 74 Wn.2d 102, 110, 443 P.2d 536 (1968), the court said:

A challenge to the sufficiency of the evidence admits the truth of the evidence of the party against whom the

challenge is made and all inferences that can reasonably be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger and in the light most favorable to the opposing party. *State v. Woody*, 73 Wn.2d 179, 437 P.2d 167 (1968), and the cases cited therein.

See also *State v. Walters*, 56 Wn.2d 79, 81, 351 P.2d 147 (1960). Applying this rule, the record discloses substantial evidence that copper and brass wire of a value in excess of $75 was stolen from Atlas Mine and Mill Supply Co. on November 26, 1968, and after burning the covering from the wire it was sold later the same day to Pacific Hide and Fur Co. in Spokane. Charles B. Owens, a metal buyer for Pacific Hide, testified he purchased the copper and brass wire on November 26, 1968 from "these boys", referring to defendants Beck and Lukenbill who were in his place of business selling scrap; the wire was transported by them in a Chevrolet car bearing license WAJ 203 which he recorded on an invoice; one of the boys signed the name "Ron Jacobson" on the invoice, together with the address "1923 South Freya"; and he did not know the name of either defendant. Owens further testified Beck sold other scrap metal to him on prior occasions.

Investigating officer Charles Shepherd went to Pacific Hide and discovered the facts outlined above. Later, he ascertained the Chevrolet was registered to William F. Lukenbill and the address "1923 South Freya" was non-existent. Thereafter, Officer Shepherd proceeded to Lukenbill's residence where he observed a Chevrolet car bearing license WAJ 203 parked in the front yard, and the remnants of a fairly new bonfire in the back yard. William Lukenbill was not at home. With Mrs. Lukenbill's permission, Officer Shepherd took samples of partially burned electric cable wire and plug-ins from the site of the bonfire. These remnants were then compared with the stolen wire and found to be of the same type. Beck and Lukenbill were then arrested. They denied any involvement in the theft or sale of the wire.

Beck testified Lukenbill was a cousin; Lukenbill just got out of prison and was living by himself at 1923 East Bruce and was unemployed; he [Beck] was involved in junking out various items and selling the scrap to junk dealers, including Pacific Hide, using a 1950 Ford pickup for the purpose of hauling the junk. Beck denied he was with Lukenbill at Pacific Hide in a Chevrolet car with a load of copper and brass wire. He also denied the signature "Ron Jacobson" was in his handwriting. To the contrary, he testified that on November 26, 1968 he and Lukenbill went to Coulee City to visit an uncle, such date being the evening before or the evening of Thanksgiving Day. The trial court took judicial notice that Thanksgiving Day was November 28, 1968. Beck also testified he and Lukenbill were employed by Pacific Hide on November 24, 1968, and they later went back to pick up their paychecks and were refused. Insofar as material, Lukenbill's testimony coincided with Beck's. No other witnesses were called by the defense.

Beck takes the position there is no evidence linking him to the theft of the wire and that his mere presence with Lukenbill at the time of sale is insufficient to establish him as a possessor of stolen goods or that he aided in the concealment of stolen goods.

■ It is true that bare possession of recently stolen property alone is not sufficient to justify a conviction. *State v. Portee,* 25 Wn.2d 246, 170 P.2d 326 (1946); *State v. Mevis,* 53 Wn.2d 377, 380, 333 P.2d 1095 (1959); *cf. United States v. Romano,* 382 U.S. 136, 15 L. Ed. 2d 210, 86 S. Ct. 279 (1965). However, the rule is otherwise when there is indicatory evidence on collateral points. *State v. Portee, supra,* at 253; *State v. Douglas,* 71 Wn.2d 303, 306, 428 P.2d 535 (1967). In *Portee,* the court said:

The general nature of this so-called "indicatory evidence on collateral points" is suggested by the following section in 4 Nichols on Applied Evidence 3664, § 29:

"SUFFICIENCY IN CONNECTION WITH OTHER EVIDENCE. Possession of recently stolen property, in connection with other evidence tending to show guilt, is sufficient to warrant a conviction. When a person is found in possession

of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction. *When the fact of possession of recently stolen property is supplemented by the giving of a false or improbable explanation of it, or a failure to explain when a larceny is charged, or the possession of a forged bill of sale, or the giving of a fictitious name, a case is made for the jury.*

(Italics ours.) Quoting *Portee* with approval, the court in *Douglas,* 71 Wn.2d at 306, said:

The Washington cases, as discussed in *Portee, supra,* support these text statements. Two of the additional circumstances listed in *Portee* were:

(3) an explanation of a kind that could not be checked or rebutted, and (4) one that a jury could regard as improbable.

In the instant case, if Beck had elected to stand on his motion for dismissal at the close of the prosecution's evidence, his position might have merit. However, Beck did not do so. He took the stand, denied his presence with Lukenbill and claimed he and Lukenbill were in Coulee City with his uncle on November 26, 1968. To the contrary, cross-examination indicated they were there the evening before or evening of Thanksgiving Day—November 27 or 28, 1968. Beck also offered testimony that he and Lukenbill were at Pacific Hide subsequent to November 24, 1968 to pick up their paychecks. These offered explanations, coupled with a denial of his presence at Pacific Hide, in the face of other evidence of his presence, create sufficient indicatory points to justify submission of the question of Beck's guilt to the jury. *State v. Portee, supra; State v. Douglas, supra.*[1]

■ Third, Beck contends the court erred in failing to give certain of defendant's proposed instructions. We disagree. The subject matter contained in defendant's proposed instructions was adequately covered in the instructions given. *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536

[1]*State v. Siemion,* 54 Wn.2d 17, 337 P.2d 715 (1959); *State v. Hiser,* 51 Wn.2d 282, 317 P.2d 1072 (1957); and *State v. Sewell,* 49 Wn.2d 244, 299 P.2d 570 (1956), cited by Beck are distinguishable on their facts.

(1968); *State v. Tanzymore,* 54 Wn.2d 290, 340 P.2d 178 (1959).

■ Fourth, Beck contends the trial court committed error in failing to grant a request for a continuance so that defendant could subpoena two witnesses to establish his presence in Coulee City. We disagree. From the time of arrest to the conclusion of trial, a 10-month period elapsed. As the trial court noted, there was adequate time to subpoena the witnesses in question, who at all times were known to Beck. In fact, Beck's own testimony placed him in Coulee City on a date other than the date alleged in the information. We find no abuse of discretion and therefore the trial court's ruling will not be disturbed. *State v. Fortson,* 75 Wn.2d 57, 448 P.2d 505 (1968).

■ Fifth, Beck, an indigent, contends the trial court erred in failing to grant reasonable attorney's fees for his court-appointed counsel. As a result Beck contends he was denied an adequate defense. We disagree. As the Supreme Court recently stated in *State v. Mempa,* 78 Wn.2d 530, 477 P.2d 178 (1970), at 534-36:

> However, where, as in this case, able and experienced counsel is appointed to represent the indigent and at all stages of representation performs his responsibilities diligently and competently, the indigent so represented has, in this respect, received his full measure of due process. The fact that such appointed counsel may or may not be fully compensated for his services under such circumstances does not diminish the measure of due process in fact bestowed upon the accused.
>
> . . .
>
> . . . Factors, of course, which should go into a consideration of the amount to be awarded are the amount of time and effort expended, the nature and extent of the services rendered, the fees paid for similar services in other jurisdictions, the prevailing bar association fee schedules, the traditional responsibilities of the legal profession, the amount of public funds made available for such purposes, and a judicious respect for the taxpaying public as well as the needs of the accused. The judge before whom the legal services are performed is in a pe-

culiarly advantageous position to consider and evaluate the factors involved, and his determination will not ordinarily be disturbed absent a manifest abuse of discretion.

Our review of this record discloses Beck was adequately represented during the trial and on this appeal.

Sixth, Beck contends it was error to allow Officer Shepherd to testify that his investigation showed Lukenbill to be the owner of the Chevrolet car. If this was error, it was not prejudicial because Lukenbill testified his father, also named William Lukenbill, owned the car.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.