[No. 5606–1.   Division One.   September 25, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. JAMES A. RHINEHART, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney,* and *Jose E. Gaitan, Deputy,* for appellant.

*Kempton, Savage & Gossard* and *Anthony Savage,* for respondent.

SWANSON, J.—The State appeals an order of dismissal granted at the close of its presentation in a prosecution for possession of stolen property, alleging error in the trial

court's conclusion that a prima facie case had not been made. We agree, and remand for trial.

The State charged James A. Rhinehart by information with possessing stolen property in the first degree, pursuant to RCW 9A.56.140(1), .150. At trial the State offered evidence demonstrating that in September 1976, Rhinehart purchased a Ford Bronco from a Mr. Briggs in Oregon for $1,200. The vehicle had been in an accident, and the front end was "totalled," resulting in a bent frame. On November 22, 1976, a Ford Bronco was reported stolen from a dealer, Hanna Motors, in Vancouver, Washington. Five days later, on November 27, 1976, Rhinehart sold a Ford Bronco to one Doyle, transferring the Briggs title to Doyle. As elements of that sale, Rhinehart demanded cash ($4,400), instructed Doyle not to have the vehicle licensed until the new year, and offered only one key which did not open all doors of the vehicle. On January 11, 1977, Mrs. Doyle had the vehicle inspected for licensing purposes at which time a patrolman discovered the identification number of the vehicle's frame matched that of the vehicle stolen from Hanna Motors. Mr. Briggs testified that a number of parts in the vehicle were from the Bronco he sold Rhinehart.

A detective testified that such a fact pattern inferred a "salvage–switch operation" by which the identity of a legally transferable, but wrecked vehicle is substituted for that of a stolen vehicle of the same make.

After the State closed, Rhinehart moved for dismissal arguing, among other things, that the State had failed to prove any stolen goods in his possession were worth more than $1,500, an element of first–degree possession of stolen property. RCW 9A.56.150(1). The trial judge agreed and dismissed. The State moved for reconsideration. At hearing the trial court denied the motion, citing as additional grounds for dismissal Rhinehart's argument that the State had failed to demonstrate the knowledge necessary for conviction.

Thus, two issues before us are whether the State failed to make a prima facie case regarding either value or knowledge. Rhinehart offers a third rationale for dismissal by challenging the adequacy of the information. We will discuss these issues seriatim.

■ The trial court believed the State failed to prove the value of any stolen property in Rhinehart's possession, and thus, a conviction for possessing stolen property in the first degree as charged was not possible. We need not decide whether the evidence of the retail value of the Hanna vehicle and the market value of the Briggs vehicle viewed in the manner most favorable to the State establish value, for the State correctly argues that a lesser included offense instruction would have been appropriate.

> A lesser included offense exists when all of the elements of the lesser offense are necessary elements of the greater offense. *State v. Bishop,* 6 Wn. App. 146, 491 P.2d 1359 (1971). Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime. Comment, *The Lesser Included Offense Doctrine,* 5 Conn. L. Rev. 255, 261 (1972).

*State v. Roybal,* 82 Wn.2d 577, 583, 512 P.2d 718 (1973). *See also State v. Schrager,* 74 Wn.2d 75, 81, 442 P.2d 1004 (1968).

■ In the instant case a lesser included offense instruction of possessing stolen property in the third degree, RCW 9A.56.170, would have been appropriate. RCW 9A.56.140(1) defines the offense of possession of stolen property:

> "Possessing stolen property" means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

Later sections delineate degrees of that offense, based on the value of the stolen property possessed.

A person is guilty of possessing stolen property in the first degree if he possesses stolen property which exceeds one thousand five hundred dollars in value.

RCW 9A.56.150(1).

A person is guilty of possessing stolen property in the third degree if he possesses stolen property which does not exceed two hundred fifty dollars in value.

RCW 9A.56.170(1). Because one could not be guilty of possessing stolen property in the first degree without also being guilty of possessing stolen property in the third degree, the latter is a lesser included offense of the former. No proof of value is necessary for conviction of the third-degree charge; thus, a lesser included offense instruction could have negated the import of the State's argued failure to prove value.

■ A necessary element of the crime of possessing stolen property is knowledge—knowledgeable possession and knowledge that the property is stolen. RCW 9A.56.150(1). Mere possession of stolen property will not justify a conviction. *State v. Douglas,* 71 Wn.2d 303, 428 P.2d 535 (1967); *State v. Portee,* 25 Wn.2d 246, 170 P.2d 326 (1946). Where possession is coupled with "indicatory evidence on collateral points," however, a conviction may be warranted. The court in *State v. Portee, supra* at 253–54 stated:

> The general nature of this so-called "indicatory evidence on collateral points" is suggested by the following section in 4 Nichols on Applied Evidence 3664, § 29:
> "SUFFICIENCY IN CONNECTION WITH OTHER EVIDENCE. Possession of recently stolen property, in connection with other evidence tending to show guilt, is sufficient to warrant a conviction. When a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction."

*See State v. Pisauro,* 14 Wn. App. 217, 220, 540 P.2d 447 (1975); *State v. Beck,* 4 Wn. App. 306, 480 P.2d 803 (1971). *Cf. State v. Budinich,* 17 Wn. App. 336, 337, 562 P.2d 1006 (1977) (wherein the court held the *Portee* standard "is an accurate and appropriate statement of the law where . . .

the issue is a challenge to the sufficiency of the State's evidence" but "is not an appropriate instruction for the guidance of the jury . . .").

■ It is undisputed that a challenge to the sufficiency of the evidence admits the truth of the evidence offered by the nonmoving party and all inferences that can reasonably be drawn therefrom. Said evidence will be interpreted most strongly against the moving party and in a light most favorable to the nonmoving party. *State v. Woody,* 73 Wn.2d 179, 181, 437 P.2d 167 (1968); *State v. Etheridge,* 74 Wn.2d 102, 110, 443 P.2d 536 (1968). The trial court was bound by this standard. *State v. Randecker,* 79 Wn.2d 512, 517, 487 P.2d 1295 (1971).

■ In this case, testimony raised numerous inferences which if believed would adequately imply the knowledge necessary for conviction. For example, Rhinehart possessed stolen property within 5 days of the report of its theft and demanded cash for its sale. He advised the buyers not to record the sale until the new year, a month hence. Taking these facts in the posture most disfavorable to Rhinehart, it would be logical for a jury to conclude that he knew the property in his possession was stolen. Thus, a dismissal on the grounds of failure to prove knowledge was improper. Indeed, Rhinehart's counsel concedes "that a prima facie case was made out on the matter of knowledge insofar as the car's *frame* is concerned."

This raises Rhinehart's final argument in support of the dismissal. Rhinehart contends that the information charged him with possession of a particular stolen car, and thus proof of possession of a stolen frame, as evidenced by the vehicle identification number, was insufficient to establish a prima facie case. With this we cannot agree.

The purpose of an information is well established.

[I]t is fundamental that an accused must be informed of the charge he is to meet at trial and that he cannot be tried for an offense not charged. U.S. Const. amend. 6; Const. art. 1, § 22 (amendment 10); *State v. Frazier,* 76 Wn.2d 373, 456 P.2d 352 (1969).

*State v. Smith,* 11 Wn. App. 216, 225, 521 P.2d 1197 (1974). And further:

> A complaint, information or indictment, though sufficient to charge a crime, may be subject to attack because it is too indefinite or uncertain to enable the accused to prepare his defense.

*State v. Dixon,* 78 Wn.2d 796, 802, 479 P.2d 931 (1971).

██ If Rhinehart intended by this semantic distinction to attack the information as being too indefinite to enable him to prepare a defense, his objection would be untimely and could not support the order of dismissal.

> Objections to the sufficiency or definiteness of an information must be made before the trial commences. *State v. Thomas,* 73 Wn.2d 729, 440 P.2d 488 (1968).

*State v. Pyles,* 9 Wn. App. 246, 248, 511 P.2d 1374 (1973). It appears, however, that Rhinehart would like this court to affirm the order of dismissal on the ground that the information's specification of a Ford Bronco, as opposed to the parts thereof, increases the State's burden of proof.[1] Thus, the argument runs, if the State failed to prove possession of a complete automobile, a prima facie case would not be present. Such an argument is untenable.

Initially, it must be emphasized that the crime charged was possessing stolen property, RCW 9A.56.140(1), not possessing a stolen vehicle. The State obviously had no intention of proving possession of a complete stolen vehicle; rather, it was attempting to prove that the parts of two automobiles had been combined to camouflage the identity

---

[1] The information reads as follows: "That the defendant James A. Rhinehart, in King County, Washington, during a period of time intervening between November 27, 1976 through November 29, 1976, did knowingly receive, retain, possess, conceal, and dispose of stolen property, to–wit: a 1974 Ford Bronco, VIN [vehicle identification number] #V15GLU08341, of a value in excess of $1,500 knowing that it had been stolen and did withhold and appropriate the same to the use of a person other than Hanna Motors, Vancouver, WA.;

"Contrary to RCW 9A.56.150/.140(1), and against the peace and dignity of the state of Washington."

of the stolen one, a "salvage-switch operation." The inclusion of the vehicle identification number by which the stolen frame was specifically identified, and by which an automobile is generally identified, was sufficient to advise Rhinehart of the facts of the offense charged. Thus, the information served its purpose. *See* CrR 2.1(b).

■ The dissent raises the issue of double jeopardy sua sponte. The standard for reviewing a double jeopardy theory turns on whether an order of dismissal constitutes a judgment of not guilty. RAP 2.2(b)(1); *State v. Jubie*, 15 Wn. App. 881, 552 P.2d 196 (1976). If the record of dismissal reflects an evaluation of the case on its own merits, in other words a weighing of the evidence, then the double jeopardy rule precludes an appeal by the State. Here the record demonstrates no such situation. The trial court granted the motion to dismiss "because of the plaintiff's failure to prove a *prima facie case* at the conclusion of its evidence in chief." (Italics ours.) Logically, the trial court would not weigh evidence it felt did not establish a prima facie case. More importantly, a jury served as the appropriate trier of fact here; thus the trial court lacked authority to weigh evidence but could only order dismissal as a matter of law. *State v. White*, 16 Wn. App. 315, 556 P.2d 255 (1976); *see also State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971).

Paraphrasing the unanimous holding in *State v. Brunn*, 22 Wn.2d 120, 154 P.2d 826, 157 A.L.R. 1049 (1945), the court in *State v. Ridgley*, 70 Wn.2d 555, 558, 424 P.2d 632 (1967), noted:

> [W]hen a trial judge usurps the province of the jury and dismisses a criminal case as a matter of law, the state has a right of appeal from the alleged erroneous dismissal of the criminal charge.

Reversed and remanded for trial.

ANDERSEN, A.C.J., concurs.

DORE, J. (dissenting)—I dissent. I would affirm the decision of the trial court dismissing the case.

The defendant James A. Rhinehart was charged as follows:

That the defendant James A. Rhinehart, in King County, Washington, during a period of time intervening between November 27, 1976 through November 29, 1976, did knowingly receive, retain, possess, conceal, and dispose of stolen property, to–wit: a 1975 Ford Bronco, VIN #V15GLU08341, of a value in excess of $1,500 knowing that it had been stolen and did withhold and appropriate the same to the use of a person other than Hanna Motors, Vancouver, WA.;

The prosecution was able to show that the only stolen part of the car was the chassis and all the other parts of the car had come off another vehicle. There was no testimony as to the value of the chassis. The cross–examination of an expert witness for the State, a specialist in the auto theft section of the Washington State Patrol, capsules this testimony as follows:

Q Okay. So at least, without going through every part of the car, you are prepared to concede that the wheels and the axles and the tailgates and the instrument panel and the glove box all might have come from some other car other than the Hannah car?

A All I can say is that the frame is what was from the Hannah vehicle.

Q *As a matter of fact, all you can say is, all that you know positively that came from the Hannah car is the frame?*

A *Yes, sir.*

Q So what we may be dealing with here is not possession of a stolen car but possession of a stolen frame?

A I can't really answer that.

(Italics mine.)

The trial court in dismissing the case for lack of evidence found that the State had not made out a prima facie case as to the value of the stolen goods and that the State failed to prove that defendant knew that the chassis was stolen at the time it was placed in the motor vehicle.

The State suggests that the case should have been submitted to the jury on the basis of a gross misdemeanor, to wit: possession of a stolen frame. However, the defendant was not charged with stealing a stolen frame. In any event the prosecutor made no motion to reduce the felony charge to a misdemeanor. In *State v. Mayner,* 4 Wn. App. 549, 483 P.2d 151 (1971), it was held that a court is not required to instruct on a lesser degree of crime, nor in a more detailed fashion, in the absence of a request.

Black's Law Dictionary 1164 (4th ed. 1951) defines motor vehicle as follows:

> In the Uniform Act Regulating Traffic on Highways, 11 U.L.A., and similar statutes, any self–propelled "vehicle," defined as including every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human or muscular power or used exclusively upon stationary rails or tracks. The term "motor vehicles," although sometimes regarded as synonymous with or limited to "automobiles," often has a broader meaning, and includes not only ordinary automobiles, but also motorbusses and trucks, as well as motorcycles. Blashfield, Cyc. of Automobile Law and Prac., Perm. Ed., § 2.

From the above definition, it is obvious that a motor vehicle is not a frame, for a frame constitutes only a part of a motor vehicle.

From a review of the entire record, we concur with the trial judge in her findings: That there is a total absence of evidence that (1) the defendant stole the car, or (2) defendant ever possessed the stolen car, or (3) defendant made or manufactured the car sold to Doyle.

This case should be dismissed for the additional reason that the trial court's order of dismissal, the subject of this appeal, is barred by the double jeopardy clause of the state constitution (Const. art. 1, § 9).

RAP 2.2(b) provides:

> The State or a local government may appeal in a criminal case only from the following superior court decisions

and only if the appeal will not place the defendant in double jeopardy:

(1) *Final Decision, Except Not Guilty.* A decision which in effect abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing an indictment or information.

The fundamental rule that judgments of acquittal, no matter how erroneous, bar any retrial and thus forbid an appeal by the state where reversal would require a retrial has recently been affirmed in *United States v. Scott,* 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978). (Notwithstanding its overruling of *United States v. Jenkins,* 420 U.S. 358, 43 L. Ed. 2d 250, 95 S. Ct. 1006 (1975).) *United States v. Scott, supra,* stated at page 91:

A judgment of acquittal, whether based on a jury verdict of not guilty or *on a ruling by the court that the evidence is insufficient to convict,* may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal.

(Italics mine.) Also, *United States v. Scott, supra,* citing *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977) with approval, stated at page 97:

a defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." *Martin Linen, supra,* at 571.

An important reason for applying the double jeopardy rule has been stated in yet another case, *Burks v. United States,* 437 U.S. 1, 11, 57 L. Ed. 2d 1, 9–10, 98 S. Ct. 2141 (1978):

The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State . . . to make repeated attempts to convict an individual for an alleged offense," since "[t]he

constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green* v. *United States,* 355 U.S. 184, 187 (1957); see *Serfass* v. *United States,* 420 U.S. 377, 387–388 (1975); *United States* v. *Jorn,* 400 U.S. 470, 479 (1971).

(Footnote omitted.)

In addition, this court in *State v. Jubie,* 15 Wn. App. 881, 552 P.2d 196 (1976), held that a trial court's dismissal of an information following a challenge to the sufficiency of the State's evidence was in essence a judgment of not guilty and an acquittal when the trial court weighed some or all of the evidence in arriving at its conclusion. It was reasoned that in such a case an appeal would be violative of the double jeopardy clause.

The trial court in granting defendant's motion to dismiss in the subject case stated:

Well, I do feel the State could have had a better case as far as motor identification numbers. We are left without that information. We are left without whether it is a hydramatic automatic or stick shift. That evidence I am sure is not before the Court. We just have testimony of the owner that at the time that he had it it was a stick. You are asking the jury to speculate, and of course taking the inference strongest in favor of the State as to value, I would say that you just have not proved that the parts that were not from the original car he purchased for $1200 were worth over $1500. *It is asking the jury to speculate. The proof is not there.*

(Italics mine.)

It is clear that the court weighed the State's evidence in coming to its conclusion to dismiss the information based upon defendant's challenge to the sufficiency of the evidence. In the subject case RAP 2.2(b) specifically prohibits the State's appeal since it would place the defendant in double jeopardy. The State is without authority to appeal.

720

I would have affirmed the trial court.

Reconsideration denied December 21, 1978.

Appealed to Supreme Court February 21, 1979.