[No. 30-40486-3.  Division Three.  October 8, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. GAIL HENDRICK-SON, *Appellant.*

*Charles T. Schillberg,* for appellant.

*Paul Klasen, Prosecuting Attorney,* for respondent.

GREEN, J.—Defendant, Gail Hendrickson, was convicted

of the crime of grand larceny of $5,500 from Columbia Bean & Produce, upon a false representation that a wheat crop grown by the defendant was not mortgaged. Defendant appeals upon two grounds:

(1) The failure to grant a motion to dismiss at the end of the state's case; and

(2) The denial of defendant's motion for judgment notwithstanding the verdict upon a challenge to the sufficiency of the evidence.

In 1964 defendant and his wife moved to the Columbia Basin from California and settled in Grant County, Washington where defendant's brother was located. With the aid of his brother's credit, defendant purchased Farm Unit 10. A crop of winter wheat was planted thereon in 1964. On November 10, 1964, defendant borrowed $5,000 from the Quincy Branch of the National Bank of Commerce, giving them a promissory note and mortgage upon all crops grown on Farm Unit 10. The bank told defendant the proceeds of the crop must be applied on the loan. Defendant thereafter acquired Farm Unit 96 on which by early 1965 he was growing a crop of beans. In April 1965, defendant discussed his farming operation with Dale Nelson, President and General Manager of Columbia Bean & Produce. Defendant's brother had previously introduced defendant to Nelson. Nelson did business for a number of years on a verbal basis with defendant's brother whom he held in high regard. Defendant advised Nelson that he would need crop financing for his farming operations. Nelson asked defendant if there were any outstanding mortgages on his crops. Nelson testified that defendant said there were none. Nelson agreed to advance moneys to defendant on defendant's crops. No security agreements were executed, Nelson relying solely on defendant's representation that no crop mortgage existed. During the latter part of July and the first part of August, defendant delivered all of the wheat grown on Farm Unit 10 to Columbia Bean. Defendant's bean crop remained to be harvested.

Prior to September 3, 1965, Columbia Bean advanced to

defendant in excess of $13,000 on defendant's crops. On September 3, 1965, defendant went to Nelson's office and represented he had a personal note due at the National Bank of Commerce in the amount of $5,500 and requested a further advance in that amount. Nelson computed the approximate sum defendant had coming on the wheat crop and estimated the amount that would be due on the bean crop to be harvested. Defendant again assured Nelson that no mortgage existed on the crops. The bookkeeper, not an employee of Columbia Bean at the time she testified, stated she heard defendant assure Nelson that no mortgage existed against the crops. Satisfied defendant's crops were sufficient to cover the advances, Nelson wrote and delivered to defendant a check payable to him individually in the sum of $5,500. Defendant said he was going to the bank to pay off his personal note. Defendant did go to the bank. He discussed his crops and bank obligations with the loan officer and told him that he had 8,000 bushels of wheat stored at Columbia Bean and a crop of beans yet to be harvested worth $20,000. Until all of the crops had been harvested and sold, the bank agreed to carry the note for $5,500 secured by the crop mortgage (delinquent September 1, 1965). Defendant did not tell the loan officer that he just obtained a $5,500 advance on the crops with which to pay off the loan, nor did he disclose that he had received other cash advances from Columbia Bean against the crops in an amount in excess of $13,000.

Proceeds of the bean crop were insufficient to satisfy all of defendant's obligations. In December 1965, the bank called Nelson asking when the wheat would be sold to pay off defendant's $5,500 note and crop mortgage. For the first time, Nelson learned of the mortgage and the bank learned that Nelson had advanced $5,500 to defendant to pay off the note and had made other advances on the crops. On May 23, 1966, Nelson was required by the bank to pay off the note and mortgage.

Defendant contends he told Nelson of the crop mortgage on Farm Unit 10; that he made no false representations;

that Nelson had actual or constructive knowledge of the crop mortgage from other sources; and that Nelson was contradictory and inconsistent in his testimony.

The record reflects that defendant argued all of the above facts and more to the jury and again to the trial court on posttrial motions.

■ Defendant waived his first challenge of error. A defendant's challenge to the sufficiency of the evidence at the end of the state's case is waived when he elects to introduce substantive evidence on his own behalf. *State v. Mudge*, 69 Wn.2d 861, 420 P.2d 863 (1966). *State v. Smith*, 74 Wn.2d 744, 768, 446 P.2d 571 (1968).

Defendant's second assignment of error is directed to the failure of the trial court to grant his motion for judgment notwithstanding the verdict. It is contended that Nelson's testimony was so contradictory or inconsistent as to render it incredible as a matter of law and should have been stricken from the record. Without it, defendant contends, the state's case would fail.

■■ Our Supreme Court has repeatedly held that the jury is the sole and exclusive judge of the evidence and the weight and credibility of the witnesses, and that it will not reverse if there is substantial evidence to support the jury's findings. *State v. Zorich*, 72 Wn.2d 31, 431 P.2d 584 (1967); *State v. Franks*, 74 Wn.2d 413, 445 P.2d 200 (1968). A challenge to the evidence requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *State v. Zorich, supra.* The jury was entitled to believe that defendant never told Nelson of the crop mortgage. This was corroborated by the bookkeeper, a disinterested witness. Had defendant told Nelson of the crop mortgage, Nelson testified he would have named the National Bank of Commerce as a joint payee on the check. The reliance of Nelson, to his detriment, upon the false representation of defendant is evident.

A review of the record clearly indicates there was substantial evidence to support the jury's finding of guilt.

Judgment is affirmed.

EVANS, C. J., and MUNSON, J., concur.

———

Petition for rehearing denied November 19, 1969.