[No. 132-41190-3.   Division Three.   August 11, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. VICKIE DUPLER, *Appellant*.

*Wellman Clark* and *Dudley Wilson*, for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney*, and *LeRoy C. Kinnie, Deputy*, for respondent.

EVANS, C. J.—Defendant Vickie Dupler appeals from a conviction by jury of being an accessory to a felony,

namely, the escape of one Robert Rose. Defendant urges as grounds for reversal that (1) the evidence is insufficient to sustain the conviction, (2) the trial court erred in failing to define for the jury the terms "aid", "harbor", and "conceal", and (3) the court erred in appointing legal counsel who was not conversant with or experienced in the practice of criminal law.

The defendant was charged with violation of RCW 9.01.040, which provides:

> Every person not standing in the relation of husband or wife, brother or sister, parent or grandparent, child or grandchild, to the offender, who after the commission of a felony shall harbor, conceal or aid such offender with intent that he may avoid or escape from arrest, trial, conviction or punishment, having knowledge that such offender has committed a felony or is liable to arrest, is an accessory to the felony.

The one count information charged, and the court instructed the jury, in the alternative with harboring *or* concealing *or* aiding Robert Rose. The evidence which the jury could find in support of the charge may be summarized as follows:

Vickie Dupler is a married woman, separated from her husband, and the mother of two children. She became acquainted with Robert Rose in March of 1968. At that time Robert Rose was on parole. On August 22, 1968 his parole officer placed him in the Spokane City jail on a parole hold. The next day, August 23, 1968, while in jail, he was served by the city police with a warrant charging him with aiding and abetting grand larceny by check. As the result of a phone call from Robert Rose, Vickie went to the city jail to visit him but was told he had been transferred to the Spokane County jail. Upon visiting the county jail she learned that while being transferred from the city jail to the county jail Robert escaped from custody. About 1 week after his escape a police officer called at the home of Mrs. Dupler and requested permission to search her premises, apparently looking for evidence that Mr. Rose was staying there. He found nothing to so indicate. Later, during the

month of September, Robert Rose visited Mrs. Dupler in her home several times and, in addition, was seen by neighbors on two or three occasions playing with the children of Mrs. Dupler in her front yard. Mrs. Dupler testified that Robert Rose had only one meal at her home during this period.

On September 30 a police officer visited Mrs. Dupler at her home, seeking information as to the whereabouts of Mr. Rose, and at that time advised her of the consequences of aiding him in his escape. Mrs. Dupler told the police officer that she had not seen nor heard from Mr. Rose and had no plans to see him. Two days later Mr. Rose was in the home of Mrs. Dupler during daytime hours. At about noon of that day Mrs. Dupler left the home to drive to town with a lady friend to pay a water bill. In her absence the police received information from an informant that Mr. Rose was in the Dupler residence. They drove to Mrs. Dupler's home and arrested Mr. Rose as he was leaving the premises. Mrs. Dupler arrived home while Mr. Rose was being arrested. The officers asked Mrs. Dupler for permission to search her house and this permission was granted. The police officers testified that Mrs. Dupler freely cooperated, except that when asked how long Mr. Rose had been in her home she did not answer. She was asked if she had any personal items belonging to Mr. Rose that he would need in jail. She went to a back bedroom, picked up some socks and a couple of shirts, went to the bathroom and took a razor and can of shaving cream from a shelf near the sink, put them in a small zipper bag and turned the bag over to the police. She identified these items as belonging to Mr. Rose. At the time there was also a photograph of Mr. Rose on her television set. This is the evidence which formed the basis for the charge and subsequent conviction of defendant Vickie Dupler as an accessory to the felony of escape.

■ At the conclusion of the state's case the defendant challenged the sufficiency of the evidence and moved to dismiss. The trial court denied the motion and thereafter the defendant introduced substantive evidence on her own be-

half, thereby waiving any claimed error in the court's denial of her motion. *State v. Mudge,* 69 Wn.2d 861, 420 P.2d 863 (1966); *State v. Smith,* 74 Wn.2d 744, 768, 446 P.2d 571 (1968); *State v. Hendrickson,* 1 Wn. App. 61, 459 P.2d 55 (1969).

Defendant did not challenge the sufficiency of the evidence at the conclusion of all testimony, took no exceptions to the instructions as given by the court, and proposed no instructions on the definition of "aiding", "harboring", or "concealing".

This court's function on appeal is to determine if there is substantial evidence upon which a finding of guilt can be predicated. *State v. Long,* 44 Wn.2d 255, 266 P.2d 797 (1954); *State v. Green,* 2 Wn. App. 57, 466 P.2d 193 (1970). We agree with the trial court there is substantial evidence to support the conviction.

Since no exception was taken to the court's failure to define the terms aiding, harboring, or concealing, and the defendant proposed no instruction defining those terms, this court will not consider any claimed error arising therefrom. As stated in *State v. Dean,* 70 Wn.2d 66, 422 P.2d 311 (1966):

> This court has held time and again that—except under the most grave and far-reaching circumstances, when to do otherwise would result in a palpable miscarriage of justice—it will not review claims of error as to instructions given or refused unless the trial court has been given timely opportunity to consider and correct the alleged error. *State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966).

In view of the evidence we are unable to find that a refusal to consider this claimed error would result in a palpable miscarriage of justice.

Defendant's final assignment of error is that the court erred in appointing counsel to represent her who was not

experienced in the practice of criminal law. A reading of the record indicates that such a contention is without merit. *State v. Silvers,* 70 Wn.2d 430, 423 P.2d 539 (1967).

Judgment is affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied September 23, 1970.

Review denied by Supreme Court October 22, 1970.